CONCRETE STEEL COMPANY, APPELLANT, v. ROWLES COM-
PANY; NATIONAL SURETY COMPANY, APPELLEE.

FILED JUNE 2, 1917. No. 19557.

1. **Counties: CONTRACTS: BONDS.** It is the duty of a county board,
in letting a contract for the construction of a county building, to
take a bond of the contractor conditioned as required by section
3840, Rev. St. 1913.

2. ———: **CONTRACTOR'S BOND: LIABILITY FOR MATERIALS.** A con-
tractor for the construction of a public building who purchases
material from a dealer who has no contract for the construction
of any part of the building, and pays such dealer therefor in good
faith, without notice of any liability of such dealer, will not be
liable on his bond under section 3840, Rev. St. 1913, to the manu-
facturer or jobber from whom such dealer may have purchased
such material.

3. ———: ———: ———. In such case the manufacturer or jobber
who has notice that the contractor is purchasing the materials
from the dealer and paying him therefor in good faith, and makes
no objection to such payment, will not be allowed to recover on
the contractor's bond for any balance of the selling price that
may be due him from such dealer.

APPEAL from the district court for Webster county:
HARRY S. DUNGAN, JUDGE. *Affirmed.*

*L. H. Blackledge,* for appellant.

*Bernard McNeny,* contra.

SEDGWICK, J.

The defendant, Rowles Company, was a general con-
tractor with the county of Webster for the construction of
a court house, and gave the bond in suit, with the National
Surety Company as surety. This plaintiff, at the request
of Julian S. Nolan Company, furnished material used in
the construction of the building. The plaintiff brought
this action in the district court for Webster county against
the Rowles Company, the original contractor, and the
National Surety Company as surety for said contractor.
There was no service upon the Rowles Company, and the

action proceeded against the surety company alone. Upon the trial the court instructed the jury to find a verdict for the defendant, upon which verdict judgment was rendered, and the plaintiff has appealed.

It appears that the bond given by the contractor contained the provisions: "(11)   That no right of action shall accrue upon or by reason hereof, to or for the use or benefit of any one other than the obligee herein named; * * * (7)   Nor shall this instrument or any rights thereunder be assignable, unless with the like consent of the defendant duly executed and attested * * * by its president or vice president and under its seal." The bond was given to the county as obligee.   The defendant insisted upon the trial, under the provisions of the bond above quoted, that no action could be brought by any one except the county.

The statute (Rev. St. 1913, sec. 3840) provides: "It shall be the duty of * * * county boards * * * and all public boards now or hereafter empowered by law to enter into a contract for the erecting and finishing, or the repairing of any public building * * * to which the general provisions of the mechanics' lien laws do not apply, and where the mechanics and laborers have no lien to secure the payment of their wages and materialmen who furnish material for said work have no lien to secure payment for material furnished in said work, to take from the person, persons, firm or corporation to whom the contract is awarded a bond in a sum not less than the contract price with at least two good and sufficient sureties, or in lieu thereof, by one surety company, conditioned for the payment of all laborers and mechanics for labor that shall be performed and for the payment for material which is actually used in the erecting, furnishing, or repairing of the building or in performing the contract.   Such bond shall be to the board awarding the contract, and no contract shall be entered into by such board until the bond herein provided for has been filed with and approved by said board.   Such bond shall be safely kept by the board

making the contract, and may be sued on by any person entitled to the benefit of this chapter."

It therefore appears that the bond given in this case is not upon its face a compliance with this statute, and is not in fact a bond under the statute. It is contended, however, that it must be construed as the statute provides, and that the defendant cannot be allowed to defend on the ground that it has incorporated in the bond the provisions not allowed by the statute. It would seem that, unless it can be so construed, the county board has not performed its duty under the statute, which duty is expressly made mandatory upon the board, and the question might arise whether the remedy would not be against the individual members of the board so failing to perform their duty. However, in the condition of this record, it does not seem to be necessary to determine either of these important questions.

It appears that the contractor, Rowles Company, purchased from the Julian S. Nolan Company of Chicago a quantity of reinforcing steel called for by their contract with the county. Their agreement expressly provided:

"Julian S. Nolan Company agree to accept the receipted freight bills at present car-load freight rates to Red Cloud, Nebraska, in partial payment of their steel and tile bills. Should default be made in prompt payment of any sum or sums due hereunder, according to the terms hereof, and at any time thereafter so long as the Rowles Company remain in default, Julian S. Nolan Company may at their option, without prejudice to any of their rights hereunder, stop shipments then and thereafter in transit, and either discontinue further shipments or make same upon any condition regarding payments due or to become due that Julian S. Nolan Company shall deem necessary for their protection. * * * It is agreed that Julian S. Nolan Company shall not be held accountable for delays caused by fires, accidents, strikes or other causes unavoidable or beyond their control. Whatever steel is desired from stock will be paid for by the Rowles

Company at the exact stock extra charged by the warehouse, but not to exceed $11 per ton above current mill steel prices."

From which it appears that it was understood that the Nolan Company was a dealer in this line of materials and kept such material in stock, but might find it necessary to replenish the stock or purchase materials from other dealers or manufacturers. The contention of the plaintiff is that under these circumstances the Rowles Company, contractor, was required to know whether the Nolan Company replenished its stock, and, if so, when and from whom it made the necessary purchases; that is, the plaintiff contends that under the statute the contractor, and his surety are liable to the manufacturer, or any person who may have been the owner, for any and all material that is actually furnished to the contractor and by him used in constructing the building. There is an interesting and somewhat exhaustive discussion in the briefs upon this question, and *United States v. American Surety Co.*, 200 U. S. 197, *Hardaway v. National Surety Co.*, 211 U. S. 552, *Mankin v. United States*, 215 U. S. 533, *Hegener Co. v. Frost*, 60 Ind. App. 108, *Forman v. St. Germain*, 81 Minn. 26, *Caulfield v. Polk*, 17 Ind. App. 429, Phillips, Mechanics' Liens (3d ed.) sec. 51, and *Monroe v. Clark*, 107 Me. 134, 30 L. R. A. (n. s.) 82, are cited as bearing upon this question. We do not find it necessary under the circumstances in this case to enter upon an exhaustive discussion of the questions involved in this contention. There must be some limit to such liability. A nail manufacturer sells to a jobber, who in turn sells to a hardware merchant, who subsequently fails, and his stock is sold at public sale by the referee in bankruptcy. A purchaser of a keg of nails at such sale exchanges it with another hardware merchant for other goods, and the latter sells it to the contractor, and the nails are finally used in the construction of the building, but the manufacturer has not been paid for them. The contention of the plaintiff seems to go so far as to hold the contractor's sureties liable to

the manufacturer for the selling price of the nails. A subcontractor, that is, one who undertakes to construct some definite part of the building, in some sense represents the contractor, and he represents the owner of the building. He is known by all parties interested in the construction of the building, and in contracting with him he can be held to guarantee, if necessary, that he will pay for the materials and labor he uses in constructing his part of the building. The cases cited seem to make a distinction between a subcontractor and a materialman, and hold the contractor and his sureties liable for materials and labor furnished to a subcontractor, and not liable to the manufacturer or dealer from whom a materialman may have purchased his stock. It appears, as already stated, that the contractor purchased this material of the Nolan Company, and understood that payment was to be made to that company. That company had no contract for the construction of any part of the building; it was not a subcontractor within the strict meaning of that term. The bills for the material were rendered by the Nolan Company to the contractor, and were paid to the Nolan Company without notice to the contractor that any other parties were interested therein. It is true that the Nolan Company ordered this material from the plaintiff company, and that it was shipped to the contractor directly by the plaintiff. While the material was being shipped, the Nolan Company wrote the plaintiff as follows:

"Gentlemen: Your mill order C 1041. We inclose herein freight receipt from the Burlington road for $403.20. Your freight allowance amounted to only $256.44, which leaves an overcharge of $146.76, and I will ask you to kindly credit our account with the amount of this overcharge, namely, $146.76. The contractor has taken credit for this overcharge collected from him* in error by the Burlington, and, as you are the shipper, you should assume this overcharge and thrash the matter out with the railroad. We called the railroad's attention to the overcharge in our letter of June 29, and we have received a

reply from the auditor of freight accounts, dated July 7, giving their claim number as follows: 911852-57. Yours very truly."

This shows that the contractor was paying Nolan Company for the materials, and that plaintiff was relying upon the Nolan Company for payment, and that the contractor was not aware that the plaintiff was interested financially in the shipment. The contractor had reason to suppose, and did suppose, that the material actually used in the construction of the building was paid for. The plaintiff knew that it was so understood by the contractor. The plaintiff was satisfied to have payment for the material made through the Nolan Company, relying upon that company as authorized to receive such payment, recognizing such payment as payment to the plaintiff, and, by neglecting to notify the contractor, consented to such payment. If the plaintiff was not entirely satisfied to have these payments made to the Nolan Company, it should have at once notified the contractor. Failing to do so, it ought not now to be allowed to collect payment the second time from the contractor.

It follows that the judgment of the district court is right, and it is

AFFIRMED.