[Civ. No. 27684.   Second Dist., Div. Four.   Sept. 10, 1964.]

PIPING SPECIALTIES COMPANY, INC., Plaintiff and Appellant, v. KENTILE, INC., et al., Defendants and Respondents.

Flynn & Rafferty and Owen P. Rafferty for Plaintiff and Appellant.

Iverson & Hogoboom and John C. Cushman for Defendants and Respondents.

KINGSLEY, J. — Defendant Kentile, Inc. (hereinafter "Kentile") is the owner of real property in Los Angeles County. It contracted with defendant W. W. Price and Company (hereinafter "Price") for the construction by the latter of a "tank farm" in connection with a plant erected by Kentile on that property. Price, in turn, contracted with defendant Gray Fabrications Co. (hereinafter "Gray") for the fabrication and delivery of certain jacketed fittings, consisting of ells, tees and spools, to be used in the performance of Price's construction contract. Gray, in its turn, purchased from plaintiff (hereinafter "Piping") materials which were used by Gray in filling its contract with Price.

Price has paid Gray all monies due the latter under the contract between them except for a nominal sum of $94.23, and has received from Gray a release of any lien rights which Gray might have had. Gray is an adjudicated bankrupt, and Piping holds an unpaid claim against Gray, in the amount of $9,107.04, for the materials furnished by Piping to Gray.

Piping duly filed its mechanic's lien against the property and thereafter brought the present action, seeking a foreclosure of that lien and for judgment against Kentile and Price for the unpaid balance of its account. After a trial, judgment was entered against plaintiff and it has appealed.

As presented to us, the sole question is the status of Gray— *i.e.*, whether Gray was a subcontractor of Price or a materialman. It is conceded that a supplier of a materialman is not entitled to a lien, but that a supplier of a subcontractor is. The trial court found that Gray was a materialman and it

is this finding (expressed in several findings of fact and conclusions of law) which is here attacked.

The line of distinction between materialmen and subcontractors has arisen in numerous cases. Both parties agree that, insofar as the present case is concerned, we start with a definition laid down by the Supreme Court in *Theisen* v. *County of Los Angeles* (1960) 54 Cal.2d 170 [5 Cal.Rptr. 161, 352 P.2d 529]. In that case, the court, after rejecting two other tests—whether or not the work was done on the job site, and whether or not more than a minimal amount of labor was involved in installation—set forth a standard in the following language:

"In our opinion the essential feature which constitutes one a subcontractor rather than a materialman is that in the course of performance of the prime contract he constructs a definite, substantial part of the work of improvement in accord with the plans and specifications of such contract. . . ." (*Theisen* v. *County of Los Angeles, supra,* (1960) 54 Cal.2d 170, 183.)

The trial court held that the part of the work performed by Gray was not "substantial" and that Gray had not performed "in accord with the plans and specifications," within the meaning of those two requirements of *Theisen*. If either of these two ultimate conclusions is correct, the judgment will stand; if both are wrong, it must be reversed.

I

We conclude that the determination that Gray had not performed a "substantial part of the work" was in error.

The finding of fact in this connection was as follows:

"9. The value of the contract between Kentile and Price without adjustments for changes or additions was $455,094.00, and was larger after those adjustments. The value of the contract between Price and Gray was $29,237.87. The value of the work performed by Gray was not substantial in comparison to the total dollar volume of the contract. The work performed by Gray when considered on a functional basis was substantial."

This finding does not support the conclusion that Gray was a materialman and not a subcontractor for three reasons. First, even on the theory apparently adopted by the trial court, Gray's work seems to us to have been substantial; it amounted to 6.67 per cent of the base contract and this does not seem to us to be a minor or trifling portion of the total job. Secondly, the word "substantial" has been used with

reference to an amount large by absolute, and not merely by comparative, standards (*Standard Oil Co. of California* v. *United States* (1949) 337 U.S. 293 [69 S.Ct. 1051, 93 L.Ed. 1371]); even in an age of inflation, $30,000 can hardly be regarded as an insubstantial sum.[1] Finally, we can see nothing in *Theisen* to suggest that the court intended to restrict the meaning of the word by reference to dollar values. As counsel point out, nowhere in that opinion is any reference made to the relation between the cost of the doors therein involved and the total cost of the building. ██ We think that the word, in the present context, means "important" or "material" and, thus construed, the last sentence of the trial court's finding above quoted compels a conclusion that Gray did perform a "substantial" part of the total work of improvement.

## II

██ However, we think that the trial court must be sustained in its holding that the work done by Gray was not work done "in accord with the plans and specifications" within the meaning of that phrase as used in *Theisen*. It must be remembered that the Supreme Court did not purport to give a complete definition of all the terms which it used. In one sense, all materials which ultimately find their way into a completed work of improvement must "accord with" the plans and with the specifications, else the basic contract between the owner and the prime contractor would not be fulfilled. We read the language above quoted, especially in connection with the court's subsequent comment that "we are not . . . interested in the sale of standard stock-in-trade" items, as meaning that a subcontractor supplies items which are designed and manufactured especially for the particular job, as distinguished from articles in general use and which are designed for use in similar jobs whenever they may be needed. We do not regard it as necessarily controlling that the items are kept in stock ready for immediate delivery (although that fact, if true, weighs in favor of the materialman category), but whether or not the item is one which manufacturers stand ready to produce and deliver, on order, according to designs already in existence. While the testimony of plaintiff's witnesses would have supported a finding that the fittings herein involved were uniquely designed for this single job, there was other testimony that they were standard

---

[1]In *Theisen*, the contract was one to furnish the doors of a value of $1,148.

items which could, and would, have been supplied according to pre-existing designs familiar to all manufacturers in the trade. The acceptance of this view by the trial court is binding on us and supports its judgment.[2]

The judgment is affirmed.

Burke, P. J., and Jefferson, J., concurred.

---

[2]The findings also recite, and it is admitted, that neither Piping nor Gray held a contractor's license. However, respondent bases no argument on this fact, apparently regarding it as immaterial. So do we. Whatever the effect of a lack of license might have been on Gray's rights against Price, it can in no way affect Gray's actual status—an unlicensed contractor is still a contractor. And it is Gray's status, not its legality which determines the rights of Piping as against Price and Kentile.