800 P.2d 195

VULCRAFT, A DIVISION OF NUCOR CORPORATION, a Texas corporation, and Prosteel Distributors, Inc., a Colorado corporation, Plaintiffs–Appellants,

v.

MIDTOWN BUSINESS PARK, LTD., et al., Defendants,

and

Metzger Construction Company, Inc., a New Mexico corporation, Defendant–Appellee,

and

Gate City Steel Corporation, Defendant–Appellant.

VULCRAFT, A DIVISION OF NUCOR CORPORATION, a Texas corporation, et al., Plaintiffs–Appellants,

v.

METZGER CONSTRUCTION COMPANY, Defendant–Appellee,

v.

UNITED STEEL FABRICATORS, INC., et al., Defendants.

Nos. 18814, 18795.

Supreme Court of New Mexico.

Oct. 25, 1990.

Butt, Thornton & Baehr, P.C., James P. Lyle, Albuquerque, for plaintiffs-appellants Vulcraft & Prosteel.

Rodey, Dickason, Sloan, Akin & Robb, P.A., Rex D. Throckmorton, Ogden M. Reid, Albuquerque, for defendant-appellee Metzger Constr.

Vernon W. Salvador, Albuquerque, for defendant-appellant Gate City Steel.

## OPINION

BACA, Justice.

Plaintiffs-appellants Vulcraft and Prosteel Distributors, Inc. (Prosteel) seek payment of $125,131.40 plus interest as consideration for steel construction material supplied to defendant United Steel Fabricators, Inc. (United Steel) for use by defendant-appellee Metzger Construction Company (Metzger) in the construction of Midtown Business Park. Plaintiffs-appellants filed a complaint seeking to foreclose on their claims of a materialman's lien, demanding judgment for the amount owed, seeking treble damages on checks issued by United Steel but returned for insufficient funds, and seeking judgment for the amount owed on a theory of unjust enrichment. Appellant Gate City Steel Corporation (Gate City) was named a defendant by virtue of its claimed interest in the project because of its own lien filed against the property. It cross claimed below, seeking to foreclose its lien and have its lien declared superior in right to those filed by the other parties, and also appeals the judgment. Metzger moved for summary judgment, arguing that Vulcraft and Prosteel were estopped to assert a lien because of releases signed when they received the checks for which insufficient funds were available, and that appellants were not entitled to a lien because of their status as suppliers. The motion was granted, and the district court, following its denial of a motion for reconsideration, certified for interlocutory appeal its decision to deny the lien claims. We granted appeal on whether summary judgment was appropriate on the question of appellant's status and their capacity to file liens.

For the purposes of this appeal, the facts of this case are straightforward. Metzger acted as the general contractor for the Midtown Business Park. It ordered steel for the construction from United Steel, which then contracted with Gate City, Vulcraft, and Prosteel for the purchase of steel. United Steel manufactured fittings from the steel provided by the suppliers to conform to the plans and specifications for the project pursuant to its contract. Ulti-

mately, although United Steel was paid by Metzger, payment was not passed on to Gate City, Vulcraft, and Prosteel, who proceeded to file liens. This suit resulted.

This case presents an issue of first impression in this jurisdiction: whether NMSA 1978, Section 48–2–2 (Repl.Pamp. 1987), authorizes a materialman furnishing supplies to a middleman that contracted with a general contractor to provide specially fabricated material in accordance with project specifications to assert a lien against the building project, even though the middleman did no work at the construction site.

Section 48–2–2, the mechanics' and materialmen's lien statute, provides, in relevant part:

> Every person performing labor upon * * * or furnishing materials to be used in the construction, alteration or repair of any * * * building * * *, or any other structure * * * has a lien upon the same for the work or labor done, for the specific contract or agreed-upon charge for the * * * materials furnished by each respectively, whether done, provided, hauled or furnished at the instance of the owner of the building or other improvement, or his agent, and every contractor, subcontractor, architect, builder or other person having charge of any mining, or of the construction, alteration or repair, either in whole or in part, of any building, or other improvement shall be held to be the agent of the owner for the purposes of this section.

In this case, appellants assert that United Steel acted as a subcontractor for Metzger, bringing them within the terms of Section 48–2–2, while Metzger asserts that United Steel was a mere supplier of steel products, making appellants suppliers to a materialman and therefore unable to file a lien. In other words, this case turns on the definition of subcontractor as that term is used in Section 48–2–2. If there exists a material issue of fact as to whether United Steel acted as a subcontractor on the project, appellants, as suppliers to United Steel, would be entitled to a trial on that issue unless other issues presented in the

summary judgment motion prove dispositive. Should appellants prevail, they would be entitled to foreclose a lien on the project within the meaning of the statute.

■ The lien statute does not allow a party who furnishes material to a contractor's supplier to file a lien. *See Ronald A. Coco, Inc. v. St. Paul's Methodist Church,* 78 N.M. 97, 100, 428 P.2d 636, 639 (1967). In *Coco,* a contractor, hired to construct a church building, purchased materials from Wood Products, including beams provided by the plaintiff, Coco. Coco was never paid and attempted to file a lien; the district court denied the lien, and we affirmed. It was not contended, as it is here, that Wood Products was a subcontractor—no claim was made that Wood Products was anything but a middleman supplying material for use in the building. The court did note, however, that: "If Wood Products had undertaken to construct the wood beams itself then it could arguably have been a subcontractor, but such is not the fact here." *Id.; see also State ex rel. W.M. Carroll & Co. v. K.L. House Constr. Co.,* 99 N.M. 186, 656 P.2d 236 (1982) (in interpretation of Little Miller Act, NMSA 1978, Section 13–4–19, court indicated that supplier to subcontractor, who apparently was situated similarly to United Steel, would prevail on lien under Section 48–2–2).

The issue left unresolved by *Coco* has returned in this case. Appellants are situated as was Coco—they supplied materials to a middleman, who in turn supplied material to a contractor working at the building site. It is uncontested that United Steel did no actual work at the site, but appellants argue that United Steel is nonetheless a subcontractor within the meaning of our statute and thus in privity with the owner. They contend that United Steel fabricated from the raw material provided by appellants a significant amount of steel goods specially manufactured according to Metzger's specifications for use in the project. Thus, we must determine whether the statute allows one who does no work at the site to nevertheless be an agent of the owner.

Two divergent lines of authority are urged upon us to define "subcontractor."

One line requires that work must be done at the construction site for a party to qualify as a subcontractor. As a Louisiana court articulated its view:

> [A] subcontractor is a worker who actually participates in the building or erection of the edifice. A materialman is one who supplies material either manufactured or fabricated for use in that building. If the fabricator of material does not engage in any process that incorporates the item furnished into the immovable under construction, he is a materialman. It matters not whether his product is procured from another manufacturer and delivered unchanged to the building site or if it is shaped by him from other materials before it is delivered to the job site.

*Leonard B. Hebert, Jr. & Co. v. Kinler*, 336 So.2d 922, 924 (La.App.1976).[1]

The alternative view is articulated in *Theisen v. County of Los Angeles*, 54 Cal.2d 170, 183, 352 P.2d 529, 537–38, 5 Cal.Rptr. 161, 169–70 (1960) (in bank):

> [T]he essential feature which constitutes one a subcontractor rather than a materialman is that in the course of performance of the prime contract he constructs a definite, substantial part of the work of improvement in accord with the plans and specifications of such contract, not that he enters upon the job site and does the construction there. We are not here concerned with the mere furnishing of materials from which doors were to be constructed by the general contractor nor are we interested in the sale of standard stock-in-trade doors. Specifically we are dealing with a contract whereby the doors were to be fabricated according to the specifications of the prime contract and as a constituent part of the construction of the public improvement which was the subject of the contract. We do not accept the view of some other jurisdictions that to be a subcontractor one must install work at the site of the improvement. Rather, we conclude that one who agrees with the prime contractor to perform a substantial specified portion of the work of construction which is the subject of the general contract in accord with the plans and specifications by which the prime contractor is bound has "charge of the construction" of that part of the work of improvement and is a subcontractor although he does not undertake to himself incorporate such portion of the projected structure into the building.

(Citations omitted); *see Piping Specialties Co. v. Kentile, Inc.*, 229 Cal.App.2d 586, 589, 40 Cal.Rptr. 537, 539 (1964) (emphasizing the meaning of a stock-in-trade item as being "whether or not the item is one which manufacturers stand ready to produce and deliver, on order, according to designs already in existence" and emphasizing meaning of substantial as "important" or "material").[2]

---

1. *See also City of Evansville v. Verplank Concrete & Supply, Inc.*, 400 N.E.2d 812 (Ind.Ct.App. 1980); *Indiana Limestone Co. v. Cuthbert*, 126 Kan. 262, 267 P. 983 (1928); *Frazier v. O'Neal Steel, Inc.*, 223 So.2d 661 (Miss.1969); *Concrete Steel Co. v. Rowles Co.*, 101 Neb. 400, 163 N.W. 323 (1917); *cf. O'Neal Steel Co. v. Leon C. Miles, Inc.*, 187 So.2d 19 (Miss.1966) (steel supplier who also installed steel into building was a subcontractor); *see generally* Annotation, *Who is Contractor or Subcontractor, as Distinguished from Materialman, for Purposes of Mechanic's Lien, Contractor's Bond, or Other Provision for Securing Compensation Under Construction Contract*, 141 A.L.R. 321 (1942).

2. *See also Sparks Constr., Inc. v. Newman Bros., Inc.*, 51 Ala.App. 690, 288 So.2d 749 (1974) (court adopted *Theisen* definition of subcontractor, emphasizing substantiality of contract work done and fact that structural steel supplied was custom fabricated to meet project specifications); *Kobayashi v. Meehleis Steel Co.*, 28 Colo. App. 327, 334, 472 P.2d 724, 727 (1970) (in light of absence of express language in statute requiring subcontractor to work at site, liberal construction and policy of statute, person must only "construct a definite, substantial part of the work of improvement in accord with the plans and specifications of the contract" and not necessarily work at site); *Holt & Bugbee Co. v. City of Melrose*, 311 Mass. 424, 41 N.E.2d 562 (1942) (equating labor performed in specially fabricated material to specifications with labor performed in construction); *Weyerhaeuser Co. v. Twin City Millwork Co.*, 291 Minn. 293, 191 N.W.2d 401 (1971) (in suit to recover for individually made doors, although amount of contract not substantial vis-a-vis entire project, it was significant; nature of contract for doors gave prime contractor notice that they would be custom manufactured; and installation by

■ We adopt, generally, the latter rule as enunciated in *Theisen* that does not require a subcontractor to have done work at the construction site, as being in accord with our statutory structure and precedent. We note that we have previously stated that our lien statute is modeled after the California statute and interpretation of that statute is persuasive as guidance to us. *Tabet v. Davenport,* 57 N.M. 540, 542, 260 P.2d 722, 723 (1953).[3]

Initially, we point out that the actions of the parties, or their perceptions of their status, are not dispositive to our determination of whether United Steel was a subcontractor, or whether appellants can maintain a lien. *See United States ex rel. Bryant v. Lembke Constr., Co.,* 370 F.2d 293 (10th Cir.1966); *Jesse F. Heard & Sons v. Southwest Steel Prods.,* 124 So.2d 211, 213 (La. App.1960) ("whether or not one is a subcontractor within the purview of the lien statute must be resolved from essential factors of legal significance other than simple designation as such by the prime contractor").

■ The purpose of our lien statute is "to protect those who, by their labor, services, skill, or materials furnished, have enhanced the value of the property sought to be charged." *Hobbs v. Spiegelberg,* 3 N.M. 357, 363, 5 P. 529, 531 (1885). The statute creates privity of contract between the owner and those contributing to the enhancement of the property to place the burden on the owner to employ responsible agents. *See id.; see also* 57 C.J.S. *Mechanics' Liens* § 3(a) (1948). The lien statute is remedial in nature and is liberally construed, although we will not apply liberal construction to create a lien where none is authorized. *Lembke Constr. Co. v. J.D. Coggins Co.,* 72 N.M. 259, 382 P.2d 983 (1963).

■ A plain reading of our statute does not limit subcontractor status to those only performing work at the site. The statute includes as an agent of the owner a "contractor, subcontractor, architect, builder or other person having charge of any mining, or of the construction, alteration or repair, either in whole or in part, of any building, or other improvement." § 48–2–2. It does not specify that the construction, alteration

---

prime contractor rather than supplier not dispositive of status); *A & J Buyers, Inc. v. Johnson, Drake & Piper, Inc.,* 25 N.Y.2d 265, 250 N.E.2d 845, 303 N.Y.S.2d 841 (1969) (requiring that some performance or labor, other than that naturally concomitant to the supplying of the material contracted for (e.g., loading or unloading of the material) must be done before the materialman can be deemed a subcontractor); *Austin Bridge Co. v. Drake,* 79 S.W.2d 677 (Tex. Civ.App.1935); *Jacobsen Constr. Co. v. Industrial Indem. Co.,* 657 P.2d 1325 (Utah 1983) (adopting *Theisen* definition).

An Arizona court has formulated a four-part test articulating factors to be considered in weighing the relevant circumstances:

(1) Does the custom in the trade consider the supplier a subcontractor or a materialman?
(2) Are the items supplied generally available in the open market or are they "customized"?
(3) In determining whether the material is "customized" do the plans and specifications call for a unique product, or are these specifications merely descriptive of what is to be furnished?
(4) Does the supplier's performance constitute a substantial and definite delegation of a portion of the performance of the prime contract?

*Tiffany Constr. Co. v. Hancock & Kelley Constr. Co.,* 24 Ariz.App. 504, 510, 539 P.2d 978, 984 (1975) (citations omitted).

**3.** Analysis of the rule requiring that, to be a subcontractor, the party must perform work at the site, as adopted in Louisiana and Indiana and urged upon us by appellees, is based on authority inappropriate to assist in interpreting our statute. Both jurisdictions relied upon S.L. Phillips, *A Treatise on the Law of Mechanics' Liens on Real and Personal Property,* Section 51 (3d ed. 1893) (hereinafter *Phillips* ). *See City of Evansville v. Verplank Concrete & Supply, Inc.,* 400 N.E.2d 812 (Ind.App.1980); *Rudolph Hegener Co. v. Frost,* 60 Ind.App. 108, 112, 108 N.E. 16, 17 (1915); *Hebert,* 336 So.2d at 924; *Jesse F. Heard & Sons v. Southwest Steel Prods.,* 124 So.2d 211, 220 (La.App.1960). A careful reading of this text indicates that, in recognizing a distinction between a contract to participate in construction and a contract to supply material, Phillips was referring to a statute creating the right to a lien only in "an architect, builder or *contractor for the erection* of a building." *Phillips* § 51 (emphasis added). Thus, for example, a lumber supplier who makes frames for the lumber for use in a building is not entitled to a lien under such a restrictive statute because, by its terms, the supplier is not in privity with the owner. Phillips, however, also recognized that lien statutes are sui generis and each statute must be interpreted according to its own terms. *Id.* § 36.

or repair must be done at the construction site. As our precedent requires, a liberal interpretation to effect the remedial purpose of the statute suggests that we should not ascribe a restrictive meaning to it.

Moreover, we have previously defined a subcontractor, in a different context, as "one who has entered into a contract express or implied, for the performance of an act, with a person who has already contracted for its performance." *Staley v. New*, 56 N.M. 756, 759, 250 P.2d 893, 895 (1952). Applying this definition in the context of Section 48–2–2, we find no requirement limiting the status of subcontractor to one who does work at the site. The factor distinguishing a subcontractor from a materialman is performance. A subcontractor cannot merely supply goods, but must perform some act, using its skill and labor, to conform some material to contract specifications. The Massachusetts Supreme Court, in an often-cited opinion on this issue, applied the identical definition, determining that:

> [O]ne who contracts to supply materials manufactured or processed especially for the general contractor and in accordance with special reference to his plans and specifications or those by which he is bound comes within that definition. It was not necessary that [the subcontractor] should have undertaken to install the finished products in question * * *. The labor performed by him * * * for the additions and alteration of the building was to all intents and purposes work performed in its construction.

*Holt & Bugbee Co. v. City of Melrose*, 311 Mass. 424, 426–27, 41 N.E.2d 562, 563 (1942) (citations omitted); *see also Jacobsen Constr. Co. v. Industrial Indem. Co.*, 657 P.2d 1325 (Utah 1983) (relying on similar definition to determine that work need not be done at construction site).

Thus, we conclude that our precedent and a plain reading of our statute in light of its policy and the liberal interpretation previously adopted by us indicates that our legislature did not intend the status of subcontractor to be limited only to contractors working at the construction site.

Although we do not share Metzger's concern that, by not requiring a subcontractor to perform work at the construction site, we subject an owner to possible liens from materialmen anywhere in the chain of supply, we do recognize that the definition of subcontractor must be limited. Section 48–2–2 distinguishes between a subcontractor and a materialman, indicating the legislature's intent that a second-tier supplier should not be entitled to a lien. We believe, however, that the definition we adopt today does limit the class of parties entitled to assert a lien.

To qualify as a subcontractor, the party must perform some portion of the work for which the owner originally contracted. It is not necessary that the work be done at the construction site, but work must be performed to the contract's plans and specifications. The work can be performed on material supplied to another subcontractor of the contractor, but the material cannot be generic, stock, off-the-shelf items or items generally available without modification—it must be fabricated uniquely or specially by the contractor for the requirements of the particular project. *See Tiffany Constr. Co. v. Hancock & Kelley Constr. Co.*, 24 Ariz.App. 504, 511, 539 P.2d 978, 985 (1975) (chips for road surfacing, although required to be individually manufactured for each order, were not uniquely manufactured to meet specifications and were generally available in market); *Piping Specialties Co.*, 229 Cal. App.2d at 589, 40 Cal.Rptr. at 539; *James D. Shea Co. v. Perini Corp.*, 2 Mass.App. 912, 321 N.E.2d 831 (1975) (material not specially manufactured and therefore supplier not subcontractor).

The work performed must also be substantial. We are not concerned with a relatively small expenditure of labor in relation to a contract mainly for material. *See Tiffany Constr.*, 24 Ariz.App. at 511, 539 P.2d at 985 (although cost of chips considerable in relation to contract price, real consideration in prime contract was application of chips to road, i.e., chip supplier did not subcontract for part of performance of essential part of contract); *A & J Buyers,*

*Inc. v. Johnson, Drake & Piper, Inc.*, 25 N.Y.2d 265, 250 N.E.2d 845, 303 N.Y.S.2d 841 (1969) (labor expended necessarily concomitant to supplying goods). The contract must be for "a definite, substantial part of the work of improvement." *Theisen*, 54 Cal.2d at 183, 352 P.2d at 537, 5 Cal.Rptr. at 169.[4] We note that the substantiality requirement accords with the statute's effect of creating privity with the owner. It gives notice that the supplier/subcontractor will be acting as an agent, allowing the owner to take protective steps to insure the party is responsible, and the requirement limits the scope of those able to file a lien.

To determine whether a party is a materialman or subcontractor, it may be informative whether the custom in trade considers it a subcontractor or generally considers certain types of goods of the type supplied to be furnished by a subcontractor or to require special fabrication in their preparation to conform to specifications.[5] The intent of the parties may also be a factor for the trial court to consider.

It also should be noted that our statute allows liens to be filed by materialmen or laborers performing at the instance of the owner or his agent, and defines statutorily certain entities as agents. A plain reading of Section 48–2–2 does not limit the agency relationship only to those enumerated entities. Accordingly, to be entitled to file a lien, a supplier or laborer can establish an agency relationship through alternative means without necessarily demonstrating that the middleman was a subcontractor or otherwise within the enumerated class of statutory agents.

Metzger argues that, because the district court ruled that new evidence submitted for the motion for reconsideration would not be considered because of noncompliance with SCRA 1986, 1–056(F), there is no evidence of custom manufacturing before us. Our examination of the record, however, indicates that appellants' original evidentiary submissions were adequate to indicate a material issue of fact regarding whether United Steel was a subcontractor or otherwise acting as an agent of the owner. We also reject appellants' argument that United Steel must be deemed a subcontractor because of Metzger's failure to respond to requests for admissions, because the district court had dismissed the lien claims before the responses were untimely.

In accordance with the foregoing, we remand to the district court for proceedings not inconsistent with this opinion.

IT IS SO ORDERED.

RANSOM and MONTGOMERY, JJ., concur.

---

4. We do not adopt, as have some jurisdictions, a mechanical test of substantiality based on a percentage of the total contract performed by the purported subcontractor. *See, e.g., Aetna Casualty & Sur. Co. v. United States ex. rel. Gibson Steel Co.*, 382 F.2d 615 (5th Cir.1967) (no sufficiently important relationship between fabricator and contractor when steel fabricator performed less than two percent of work); *LaGrand Steel Prods. Co. v. A.S.C. Constructors, Inc.*, 108 Idaho 817, 702 P.2d 855 (Ct.App.) (substantial and important relationship based on fabricators contract for ten percent of total performance), *rev. denied*, 116 Idaho 466, 776 P.2d 828 (1985); *Farwest Steel Corp. v. Mainline Metal Works, Inc.*, 48 Wash.App. 719, 741 P.2d 58 (no substantial relationship in part because supplier performed less than one percent of work), *rev. denied*, 109 Wash.2d 1009 (1987). Substantiality is determined based on evaluating the amount of labor and skill provided in relation to the material supplied and the importance of the contribution to the project.

5. It should be noted that all material required at a construction site must conform to the project specifications, and the mere fact that goods supplied were required to conform to the project plans, without more, is not determinative.