2005-NMCA-088

115 P.3d 822

**WILGER ENTERPRISES, INC.,**
Plaintiff–Appellee,

v.

**BROADWAY VISTA PARTNERS, a California Partnership; FHK Companies, a California Partnership; Nailman, Ltd., Co.; Edison Source d/b/a Edison Source Corp.; Sucon, Inc. d/b/a Suitt Contractor; KPT, Inc.; and Mid–State Erectors, Inc., Defendants–Appellants.**

No. 24,747.

Court of Appeals of New Mexico.

June 6, 2005.

Julie J. Vargas, Hunt & Davis, P.C., Albuquerque, NM, for Appellee.

Robert A. Johnson, Johnson & Nelson, P.C., Albuquerque, NM, for Appellant Broadway Vista Partners.

David P. Gorman, Sheehan, Sheehan & Stelzner, P.A., Albuquerque, NM, for Appellant KPT, Inc.

Shay E. Meagle, Puccini & Meagle, P.A., Albuquerque, NM, for Appellant Sucon, Inc.

## OPINION

VIGIL, Judge.

{1} Broadway Vista Partners (Owner) contends that the lien of Wilger Enterprises, Inc., (Contractor) is invalid because Contractor did not give Owner a written prelien notice of its right to claim a lien in the event of nonpayment under NMSA 1978, Section 48–2–2.1 (1993). We hold that Section 48–2–2.1 did not require Contractor to provide Owner with a prelien notice and affirm the district court order granting Contractor summary judgment on its complaint to foreclose its mechanic's lien.

## BACKGROUND

{2} Owner and Furr's Supermarkets, Inc., agreed to build a shopping center on land owned by Owner in Albuquerque, New Mexico through the mechanism of a twenty-five year lease with options to renew for four additional periods of five years each. "As a material part of the consideration" to Owner, Furr's agreed to build a "48,000 square foot Furr's supermarket building together with sidewalks adjacent to the building, a loading dock and all on-site improvements." Furr's was also required to share in 71.11% of the costs for the "off-site improvements" which were to be installed by Owner. The "off-site improvements" Owner agreed to install included "traffic control devices, street paving, storm drains, curbs, curb cuts, gutters, median strips, sidewalks, street lights," and "necessary utilities to the property line of the Shopping Center." Since the lease provided that Owner would own the supermarket after Furr's constructed it, Owner agreed to reimburse Furr's for its costs to construct the supermarket up to a total of $3,017,522 in

four periodic progress payments. During the construction, Furr's was to pay "interim rent" to Owner, which was adjusted upward as Owner installed the "off-site improvements" and made the periodic payments to Furr's. After construction was completed, Furr's was to pay rent to Owner plus "bonus rent," equal to one and one-half percent of Furr's gross sales each year that exceeded its gross sale during its fifth year of operation. The lease also required Furr's to purchase casualty and fire insurance during the lease term, naming Owner and Furr's as the insureds "as their respective interests may appear" and it also provided a formula for disbursing an award to the Owner and Furr's in the event of a total or partial condemnation of the premises.

{3} Furr's then contracted with Contractor to construct the supermarket. Before construction on the supermarket started, Furr's told Contractor that Owner was going to reimburse Furr's for the construction costs, which Contractor verified in a call to Owner. When Contractor sent Furr's its first pay request, Furr's asked Owner to make the progress payments directly to Contractor rather than reimbursing Furr's as specified in the lease. Everyone agreed. Under this arrangement, Owner paid the Contractor directly after Contractor submitted an application for payment to Owner, and the application was approved by the architect and the civil engineer hired by Furr's for the project. Owner made five payments to Contractor following this procedure. Owner refused to make two additional payments requested by Contractor because they would have resulted in Owner paying more than the $3,017,522 it was obligated to pay under its lease with Furr's.

{4} Contractor then recorded a Claim of Lien with the Bernalillo County Clerk and filed a complaint to foreclose its mechanic's lien on Owner's property to recover the amount due for its work on the supermarket. In ruling on cross-motions for summary judgment filed by Contractor and Owner, the district court granted Contractor's motion for summary judgment, and Owner appeals.

## STANDARD OF REVIEW

{5} Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Rule 1–056(C) NMRA. The facts are not disputed. In particular, it is undisputed that Contractor never gave Owner a written prelien notice under Section 48–2–2.1. The issue presented is whether Contractor was required to provide Owner with a written prelien notice under Section 48–2–2.1 to have an enforceable mechanic's lien. We review this legal question de novo. *See Joslin v. Gregory,* 2003–NMCA–133, ¶ 6, 134 N.M. 527, 80 P.3d 464 (stating that application of a statute is a question of law when the facts are undisputed); *Blackwood & Nichols Co. v. N.M. Taxation & Revenue Dep't,* 1998–NMCA–113, ¶ 5, 125 N.M. 576, 964 P.2d 137 ("Construction of a statute is a question of law that we review de novo.").

## DISCUSSION

{6} The prelien notice statute at Section 48–2–2.1(B) states:

No lien of a mechanic or a materialman claimed in an amount of more than five thousand dollars ($5,000) may be enforced by action or otherwise unless the lien claimant has given notice in writing of his right to claim a lien in the event of nonpayment and that notice was given not more than sixty days after initially furnishing work or materials, or both, by either certified mail, return receipt requested, [f]ax with acknowledgement or personal delivery to:

(1) the owner or reputed owner of the property upon which the improvements are being constructed; or

(2) the original contractor, if any.

{7} However, a prelien notice does not have to be given to perfect "claims of liens made by mechanics or materialmen who contract directly with the original contractor" and an "original contractor" is defined as "a contractor that contracts directly with the owner." Section 48–2–2.1(A).

{8} Owner argues that Contractor's lien is unenforceable under the literal terms of the statute because Contractor failed to give Owner a written prelien notice of its right to claim a lien in the event of nonpayment as provided in the statute. Contractor responds that it is an "original contractor" and, properly construed, the statute does not require an "original contractor" to give an owner a prelien notice of its right to claim a lien in the event of nonpayment.

{9} We first determine whether Contractor is an "original contractor" under Section 48–2–2.1. Owner argues that because the written contract to build the Furr's supermarket was between Contractor and Furr's and not between Contractor and Owner, Contractor is not an "original contractor." We reject Owner's argument because nothing in the statutory definition of "original contractor" excludes a contract made by an owner with a contractor through an agent. *See Warshaw v. Pyms,* 266 So.2d 355, 357 (Fla.Dist.Ct.App.1972) ("An owner of real estate can become directly obligated to an engineer, for performance by the latter of services relating to his property, by a contract which is made with the engineer by the owner through an agent, as effectively as if the parties made such contract face-to-face."); *Armstrong v. Blackadar,* 118 So.2d 854, 861 (Fla.Dist.Ct.App.1960) ("Florida [law] does not preclude an owner of property from contracting through an agent for improvements to be made on his property so as to subject the property to a lien").

{10} Owner and Furr's were jointly engaged in the undertaking of constructing the supermarket for their mutual benefit. A joint venture "is generally considered to be a partnership for a single transaction," *Lightsey v. Marshall,* 1999–NMCA–147, ¶ 18, 128 N.M. 353, 992 P.2d 904 (internal quotation marks and citation omitted), and the relationship between Furr's and Owner established by the lease to construct the supermarket has the earmarks of a joint venture. "A joint venture exists when two or more parties (1) enter into an agreement, (2) to combine their money, property or time in the conduct of some particular business deal, (3) agree to share in the profits and losses of the venture jointly, and (4) have the right of mutual control over the subject matter of the enter-

prise or over the property." *Id.* ¶ 13 (internal quotation marks and citation omitted). In addition to the relationship created by the lease, Owner directly involved itself in the project when it agreed to pay Contractor directly instead of reimbursing Furr's as provided in the lease. Those payments were made only after approval was given by the civil engineer and architect hired by Furr's. The supermarket was constructed at the instance of Owner through Furr's and Owner directly paid Contractor for its work and materials. Under these circumstances, Owner could not disclaim liability for Contractor's lien under NMSA 1978, Section 48–2–11(1953) (allowing an owner to post a notice that he is not responsible for improvements made on his land within three days of learning of the construction, alteration, or repair, or intended construction, alteration, or repair). *See Arctic Lumber Co. v. Borden,* 211 F. 50, 51, 54–55 (9th Cir.1914) (stating that where the owner of land leased his property under a contract obligating the lessee to construct a building, and the lessee was held to be an agent of the owner, the owner was precluded from eluding liability by posting a notice of non-liability) (discussed with approval in *Skidmore v. Eby,* 57 N.M. 669, 672, 262 P.2d 370, 373 (1953)).

{11} In *Stroh Corp. v. K & S Dev. Corp.,* 247 N.W.2d 750, 751 (Iowa 1976), the owner of a vacant lot entered into a lease which required the lessee to construct a car wash and gasoline facility on the lot pursuant to plans approved by the owner at an estimated cost of $50,000. When the final construction costs were verified, the owner was to reimburse lessee up to the sum of $50,000. *Id.* The initial lease term was for fifteen years with options for two consecutive five-year terms. When completed, title to all the real estate improvements vested in lessor. *Id.* at 752. Lessee contracted with a contractor to construct the facility, which in turn subcontracted mechanical work to Stroh Corporation. Lessor paid lessee, who in turn paid the contractor. However, contractor did not pay Stroh Corporation, which then filed a mechanic's lien against lessor's lot, and subsequently successfully foreclosed on the lien. *Id.* Affirming, the Iowa Supreme Court held that in these circum-

stances, the lessee was lessor's agent. *Id.;* *see also Bay v. Barenie,* 421 N.E.2d 6, 7, 9 (Ind.Ct.App.1981) (stating that an excavator who enters into a subcontract with one partner of a land development partnership can recover from the partnership); *Seaboard Sur. Co. v. Richard F. Kline, Inc.,* 91 Md. App. 236, 603 A.2d 1357, 1362–64 (1992) (holding that subcontractor who contracted with joint venturer had a "direct contract" with the joint venture itself where it was undisputed that joint venturer was acting on behalf of and with the authority of the joint venture when contracting with the subcontractor); *Bell v. Tollefsen,* 782 P.2d 934, 938 (Okla.1989) (stating that when an agency exists between a landlord and tenant, the landlord's property interest may be subject to a mechanic's and materialman's lien for improvements and services provided to the tenant but holding that the landlord-tenant relationship alone did not create an agency); *Interiors Contracting, Inc. v. Navalco,* 648 P.2d 1382, 1387 (Utah 1982) (stating that a lease can create an agency between a lessor and a lessee under the mechanic's lien law when the improvement is for the benefit of the lessor and he is having the work done through his lessee).

{12} We agree with the reasoning of the foregoing authorities as applied to the facts of this case. We therefore hold that, for the purpose and in the application of the prelien notice statute, Section 48–2–2.1, and under the undisputed facts evidencing the relationships between Owner and Furr's, Owner and Furr's were joint venturers in the construction of the supermarket. As such, Contractor's contract with Furr's constituted as well a direct contract with Owner. Therefore, Contractor is an "original contractor" under Section 48–2–2.1.

{13} Next, we determine whether Section 48–2–2.1(B) requires an "original contractor" to give an owner a written prelien notice of its right to claim a lien in the event of nonpayment as a prerequisite to an enforceable lien. Our primary goal in interpreting the statute is to ascertain and give effect to the legislature's intent. To do so, we first look to the plain meaning of the words used in the statute. *See Hovet v. Allstate Ins. Co.,*

2004–NMSC–010, ¶ 10, 135 N.M. 397, 89 P.3d 69. This approach, however, does not always disclose the legislative intent:

> [The plain meaning rule's] beguiling simplicity may mask a host of reasons why a statute, apparently clear and unambiguous on its face, may for one reason or another give rise to legitimate (i.e., nonfrivolous) differences of opinion concerning the statute's meaning. In such a case, it can rarely be said that the legislation is indeed free from all ambiguity and is crystal clear in its meaning. While ... one part of the statute may appear absolutely clear and certain to the point of mathematical precision, lurking in another part of the enactment, or even in the same section, or in the history and background of the legislation, or in an apparent conflict between the statutory wording and the overall legislative intent, there may be one or more provisions giving rise to genuine uncertainty as to what the legislature was trying to accomplish. In such a case, it is part of the essence of judicial responsibility to search for and effectuate the legislative intent—the purpose or object—underlying the statute.

*State v. Rivera,* 2004–NMSC–001, ¶ 11, 134 N.M. 768, 82 P.3d 939 (quoting *State ex rel. Helman v. Gallegos,* 117 N.M. 346, 353, 871 P.2d 1352, 1359 (1994) (alteration in original)).

{14} A literal reading of Section 48–2–2.1(B) allows an original contractor, who by definition contracts directly with the owner, to give itself, and not the owner, written notice of its right to claim a lien in the event of nonpayment to perfect a lien that is subsequently filed of record under NMSA 1978, Section 48–2–6 (1979). Contractor argues, and we agree, that this hardly seems reasonable. Where there is an ambiguity in the statute, or where the literal meaning of the words renders the statute absurd or unreasonable, we construe the statute according to its purpose or object. *See Rivera,* 2004–NMSC–001, ¶ 13, 134 N.M. 768, 82 P.3d 939; *State v. Davis,* 2003–NMSC–022, ¶ 6, 134 N.M. 172, 74 P.3d 1064. To do so, we consider the history and background of the statute, including historical amendments. *See State v. Smith,* 2004–NMSC–032, ¶ 10, 136 N.M. 372, 98 P.3d 1022; *Rivera,* 2004–NMSC–001, ¶ 13, 134 N.M. 768, 82 P.3d 939.

{15} Since 1880, New Mexico law has provided persons who provide labor, services, or materials to improve real estate with a lien against the real estate improved to secure payment of the contract or agreed upon charge. The purpose of the lien is to "protect those who, by their labor, services, skill, or materials furnished, have enhanced the value of the property sought to be charged." *Hobbs v. Spiegelberg,* 3 N.M. 357, 363, 5 P. 529, 531 (1885). As applied to this case, the historical mechanism for imposing a lien has been straightforward. First, the statutes have provided that "[e]very person performing labor upon" a building or other improvement "or furnishing materials to be used in the construction, alteration, or repair" of a building or other improvement "has a lien upon the same for the work or labor done" for the specific contract or agreed upon charge when the labor or materials have been provided "at the instance of the owner of the building ... or his agent." 1880 N.M. Laws ch. 16, § 2 (codified at NMSA 1978, Section 48–2–2 (1993)). Second, the statutes have stated that "[t]he land upon which any building, improvement, or structure, is constructed" is "also subject to the lien, if at the commencement of the work, or of the furnishing the materials for the same, the land belonged to the person who caused said building, improvement or structure to be constructed, altered, or repaired," but "if such person owned less than a fee simple estate in such land, then only his interest therein is subject to such lien." 1880 N.M. Laws ch. 16, § 4 (codified at NMSA 1978, Section 48–2–4 (1993)). Finally, the statutes have provided that every such building or other improvement "constructed upon any lands with the knowledge of the owner" is "hel[d] to have been constructed at the instance of such owner" with the result that the owner's interest in the land "shall be subject to any lien" filed unless within three days after "obtain[ing] knowledge" of the "construction, alteration, or repair, or the intended construction, alteration, or repair" he gives notice that he will not be responsible "by posting a notice in writing to the effect, in some con-

spicuous place upon said land, or upon the building or other improvement situated thereon." 1880 N.M. Laws ch. 16, § 11 (codified at Section 48–2–11).

{16} As we have noted, the lien arises when the building or improvement is constructed, altered, or repaired "at the instance of the owner . . . or his agent." To achieve the statutory purpose, New Mexico law has also provided since 1880 that "[e]very contractor, sub-contractor, architect, builder, or other person having charge . . . of the construction, alteration or repair, either in whole or in part, of any building or other improvement . . . shall be held to be the agent of the owner, for the purposes of this [section]." 1880 N.M. Laws ch. 16, § 2 (now codified at Section 48–2–2). The owner of the property is therefore in privity of contract by force of the statute with any person who supplies services or materials to any contractor or subcontractor of the building or improvement. *See Hobbs,* 3 N.M. at 363, 5 P. at 531. The owner would not otherwise be liable for the debt because he did not contract it. *Id.; see Vulcraft v. Midtown Bus. Park, Ltd.,* 110 N.M. 761, 765, 800 P.2d 195, 199 (1990) (reiterating that the purpose of the lien statute is "to protect those who, by their labor, services, skill, or materials furnished, have enhanced the value of the property sought to be charged," and that "statute creates privity of contract between the owner and those contributing to the enhancement of the property" (internal quotation marks and citation omitted)).

{17} Under New Mexico law, second, third, fourth, and beyond subcontractors, and virtually anyone dealing with them who perform work could therefore subject an owner's property to a lien. *Vulcraft,* for example, holds that where a business supplied raw material to a middleman, who in turn manufactured steel goods in accordance with project specifications pursuant to its contract with a general contractor but did no work at the site, the middleman could be classified as a "subcontractor" under Section 42–2–2, thereby creating a statute-based privity between the supplier and the owner, and entitling the supplier to file a lien. *Vulcraft,* 110

N.M. at 763, 765–66, 800 P.2d at 197, 199–200. *Vulcraft* adds:

It also should be noted that our statute allows liens to be filed by materialmen or laborers performing at the instance of the owner or his agent, and defines statutorily certain entities as agents. A plain reading of Section 48–2–2 does not limit the agency relationship only to those enumerated entities. Accordingly, to be entitled to file a lien, a supplier or laborer can establish an agency relationship through alternative means without necessarily demonstrating that the middleman was a subcontractor or otherwise within the enumerated class of statutory agents.

*Id.* at 767, 800 P.2d at 201.

{18} In this context, the prelien notice statute, Section 48–2–2.1, entitled, "Procedure for perfecting certain mechanics' and materialmen's liens" was enacted in 1990. (The statute was amended in 1993 with changes that are not significant to our decision here. 1993 N.M. Laws ch. 252, § 2). As we construe the statute, an original contractor and its first level subcontractors are not required to give notice in writing of a right to claim a lien in the event of nonpayment. However, all third level and higher subcontractors and those in privity with them must give such a notice to the owner or original contractor or they will not have an enforceable lien. Our reasoning follows.

{19} On the one hand, all persons who perform labor upon or furnish materials to be used in the construction, alteration, or repair of a building are entitled to be paid. The statutory mechanism of creating privity between the owner and virtually anyone who does so, coupled with a right to impose a lien upon the owner's property to secure payment for the labor or materials, accomplishes this result. The result may be that the owner's liability may extend to suppliers and workers of which the owner may not or would not be aware. Fairness to the owner dictates that at a certain level, notice should be given to the owner that workers and suppliers may claim a lien in the event of nonpayment. This way, the owner at least knows who they are and has an opportunity insure that they are paid and thereby prevent a lien from

being filed against his property. This is consistent with one generally recognized purpose of a prelien notice requirement: "to warn the owner of the property against paying the original contractor while outstanding claims exist in favor of laborers and materialmen, and to give him the opportunity to discharge the debt before the lien is filed." Maurice T. Brunner, Annotation, *Who Is the "Owner" Within Mechanic's Lien Statute Requiring Notice of Claim,* 76 A.L.R.3d 605, 615, 1977 WL 45713 (1977). Section 48–2–2.1(D) accomplishes this purpose by requiring a written notice of a right to claim a lien in the event of nonpayment which shall contain:

> (1) a description of the property or a description sufficiently specific for actual identification of the property;
>
> (2) the name, address and phone number, if any, of the claimant; and
>
> (3) the name and address of the person with whom the claimant contracted or to whom the claimant furnished labor or materials, or both.

*Id.* Furthermore, the notice must be given "not more than sixty days after initially furnishing work or materials, or both, by either certified mail, return receipt requested, [f]ax with acknowledgement or personal delivery." Section 48–2–2.1(B).

{20} The statute itself determines at which level the notice must be provided to the owner. It specifically states that no prelien notice must be given for "claims of liens made by mechanics or materialmen who contract directly with the original contractor," Section 48–2–2.1(A), and "original contractor" is defined to mean "a contractor that contracts directly with the owner." *Id.* First level subcontractors—those who contract directly with the "original contractor"—are excluded from having to provide a written prelien notice. Anyone who does not contract directly with the "original contractor" is therefore required to provide a prelien notice

as a prerequisite to having an enforceable lien.

{21} We therefore conclude that the legislature did not intend to require an original contractor to provide prelien notice. By definition, the owner contracts directly with the original contractor and therefore already knows all the information that is required to be provided by Section 48–2–2.1(D) in a written prelien notice. *See Dave Kolb Grading, Inc. v. Lieberman Corp.,* 837 S.W.2d 924, 936 (Mo.Ct.App.1992) ("An owner of property contracts with an original contractor and knows whether the original contractor has been paid; thus, the owner does not need notice of the filing of a lien."). Requiring the "original contractor" to comply with the prelien notice requirement but not subcontractors who contract directly with the "original contractor" makes no sense and serves no practical purpose. We therefore hold that the legislature did not intend Section 48–2–2.1 to require an "original contractor" to give a prelien notice to have an enforceable lien.

{22} Because we conclude that it was an original contractor, Contractor was not required to perfect its lien by providing Owner with written notice of its right to claim a lien against Owner's property. Therefore, we hold that the district court properly enforced Contractor's mechanic's lien.

## CONCLUSION

{23} We affirm the order of the district court's granting Contractor's motion for summary judgment.

{24} **IT IS SO ORDERED.**

We concur: JONATHAN B. SUTIN and CYNTHIA A. FRY, JJ.