2006-NMCA-047

134 P.3d 780

**DIRECTOR, LABOR AND INDUSTRIAL DIVISION, NEW MEXICO DEPARTMENT OF LABOR, Plaintiff–Appellee,**

v.

**ECHOSTAR COMMUNICATIONS CORPORATION, Defendant–Appellant.**

**No. 25,777.**

Court of Appeals of New Mexico.

Feb. 28, 2006.

Certiorari Granted, No. 29,724, April 20, 2006.

494

Patricia A. Madrid, Attorney General, Andrea R. Buzzard, Assistant Attorney General, Santa Fe, NM, for Appellee.

Bannerman & Williams, P.A., James T. Reist, Katherine Gibson, Albuquerque, NM, for Appellant.

## OPINION

PICKARD, Judge.

{1} The Minimum Wage Act, NMSA 1978, §§ 50–4–19 to –30 (1955, as amended through 2005) (the Act), establishes a floor below which employers cannot pay employees wages and also requires the payment of time and a half for work in excess of a forty-hour workweek. *See especially* § 50–4–22(A) (providing generally for a minimum wage of $5.15 per hour); § 50–4–22(C) (providing that employees "shall not be required to work more than forty hours in any week of seven days, unless the employee is paid one and one-half times the employee's regular hourly rate of pay for all hours worked in excess of forty hours"). The question we address in this case is whether an employer and employee may agree to a fluctuating rate of pay, pursuant to which the employee is paid a fixed weekly salary plus an overtime factor of one-half of the hourly rate, which hourly rate is calculated such that it decreases as the number of hours worked increases. We agree with both courts below and hold that the Act does not permit such agreements, which conflict with the Act's prohibition against overtime paid at less than time and a half.

## I. FACTS AND PROCEEDINGS

{2} Echostar Communications Corporation is a national corporation. It employed Terri Wendt in its Albuquerque office. Wendt and Echostar executed an agreement setting forth Wendt's salary and how overtime would be calculated. Pursuant to the agreement, Wendt would be paid $509.62 per week regardless of whether she actually worked less than forty hours or forty hours, but she would be paid overtime calculated by dividing the number of hours worked into $509.62 and then multiplying one-half of that result by the number of hours worked in excess of forty and adding that figure to $509.62. Thus, for example, if Wendt worked forty-five hours, her regular hourly rate would be $509.62 divided by 45, or $11.32, one-half of which would be $5.66. This $5.66 would be multiplied by 5, the number of overtime hours worked, for a total of $28.30, which would be added to the $509.62, for a total of $537.92 remuneration for the week.

{3} Wendt initiated this case by filing a wage claim with the Director of the Labor and Industrial Division of the Department of Labor (DOL), which ruled in her favor. After Wendt assigned her wage claim to the DOL, it filed a complaint in metropolitan court, which Echostar duly answered. Echostar moved for summary judgment. In metropolitan court, the parties agreed that there were no genuine issues of material fact, and each party claimed to be entitled to judgment as a matter of law. The metropolitan court ruled in favor of the DOL. Echostar appealed to the district court, which affirmed the judgment of the metropolitan court. Echostar now appeals to this Court.

{4} The DOL's position is that instead of being paid $537.92 in the above example, Wendt should have been paid $605.17, calculated as follows: $509.62 divided by 40 equals $12.74, which is the regular hourly rate. One and one-half times this hourly rate is $19.11; $19.11 multiplied by 5 equals $95.55, which should be added to $509.62, for a total of $605.17. If Wendt worked sixty hours, instead of forty-five, the calculations would be:

| Echostar method | DOL method |
|---|---|
| $509.62 ÷ 60 = $8.49 | $509.62 ÷ 40 = $12.74 |
| ½ × $8.49 = $4.25 | 1½ × $12.74 = $19.11 |
| $4.25 × 20 = $85.00 | $19.11 × 20 = $382.20 |
| $85 + $509.62 = $594.62 | $382.20 + $509.62 = $891.82 |

It can be readily seen that Echostar's method results in significantly less overtime pay. For a week of eighty hours of work, the results are even more dramatic: $637.22 for that week under Echostar's method versus $1274.02 under the DOL method.

## II. DISCUSSION

### A. STANDARD OF REVIEW

{5} The issue raised on appeal is whether the words "regular hourly rate of pay" contained in Section 50-4-22(C) permit employers and employees to negotiate a fluctuating workweek and resulting fluctuating rate of pay on which to calculate overtime. Construction of statutes is a question of law that we review de novo. *Blackwood & Nichols Co. v. N.M. Taxation & Revenue Dep't*, 1998-NMCA-113, ¶ 5, 125 N.M. 576, 964 P.2d 137. In addition, the parties agreed in the trial court that there were no genuine issues of material fact and that summary judgment was proper for one party or another. In these circumstances also, our review is de novo. *See Wilger Enters., Inc. v. Broadway Vista Partners*, 2005-NMCA-088, ¶ 5, 137 N.M. 806, 115 P.3d 822.

### B. GENERAL RULES OF STATUTORY CONSTRUCTION

{6} The primary goal in interpreting a statute is to give effect to the legislature's intent. *State v. Davis*, 2003-NMSC-022, ¶ 6, 134 N.M. 172, 74 P.3d 1064. "Statutes are to be read in a way that facilitates their operation and the achievement of their goals." *Miller v. N.M. Dep't of Transp.*, 106 N.M. 253, 255, 741 P.2d 1374, 1376 (1987), *superceded by statute on other grounds as stated in Gallegos v. Sch. Dist. of W. Las Vegas*, 115 N.M. 779, 858 P.2d 867 (Ct.App.1993). Statutes are not to be read in a manner that would make portions of them superfluous. *State v. Rivera*, 2004-NMSC-001, ¶ 18, 134 N.M. 768, 82 P.3d 939.

### C. MEANING OF "REGULAR HOURLY RATE OF PAY"

{7} Our cases recognize that the Act is a statute with a remedial purpose and that it must be construed liberally to accomplish that purpose. *See N.M. Dep't of Labor v. A.C. Elec., Inc.*, 1998-NMCA-141, ¶ 13, 125 N.M. 779, 965 P.2d 363. The Act itself declares that its policy is "to establish minimum wage and overtime compensation standards for all workers at levels consistent with their health, efficiency and general well-being" and to protect "workers against the unfair competition of wage and hours standards which do not provide adequate standards of living." Section 50-4-19. Construing a similar statute, one of our sister states has noted that these acts' "purposes are to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work and to spread employment through inducing employers to shorten hours because of the pressure of extra cost." *Janes v. Otis Eng'g Corp.*, 757 P.2d 50, 53 (Alaska 1988) (internal quotation marks and citation omitted). Another jurisdiction with a similar statute has noted that "[p]remium pay for overtime is the primary device for enforcing limitations on the maximum hours of work." *Skyline Homes, Inc. v. Dep't of Indus. Relations*, 165 Cal.App.3d 239, 211 Cal.Rptr. 792, 798 (Ct. App.1985), *overruled on other grounds by Tidewater Marine W., Inc. v. Bradshaw*, 14 Cal.4th 557, 59 Cal.Rptr.2d 186, 196, 927 P.2d 296 (1996). In light of these purposes, it makes little sense to construe the statute to lessen the financial impact on employers the more hours that employees are required to work.

{8} We also find support for our conclusion in a 1999 amendment to Section 50-4-22(C). Prior to the amendment, Section 50-4-22(C) provided that "[n]o employee covered by the provisions of Subsection A of this section shall be required to work more than forty hours in any week of seven days, unless he is paid one and one-half times his regular hourly rate of pay for all hours worked in excess of forty hours." In 1999, the legislature added the following language:

> For an employee who is paid a fixed salary for fluctuating hours and who is employed by an employer a majority of whose business in New Mexico consists of providing investigative services to the federal government, the hourly rate may be calculated in accordance with the provisions of the

federal Fair Labor Standards Act and the regulations pursuant to that act; provided that in no case shall the hourly rate be less than the federal minimum wage.

1999 N.M. Laws, ch. 164, § 1.

{9} This additional provision specifically allows what Echostar contends should be the general rule for all employers. *See* 29 C.F.R. § 778.114(a), (c) (2005). Yet it expressly applies only to certain employers. Had calculating overtime based on a fixed salary for fluctuating hours been permissible under the original version of Section 50–4–22(C), there would have been no reason for the legislative amendment in 1999. Similarly, the legislative amendment would be superfluous if Echostar is correct that "regular hourly rate of pay" contemplates fixed salaries for fluctuating hours generally. As stated above, we will not construe portions of a statute to be superfluous. *Rivera,* 2004–NMSC–001, ¶ 18, 134 N.M. 768, 82 P.3d 939.

## D. ECHOSTAR'S ARGUMENTS

{10} Echostar's basic argument is that its agreement with Wendt is not clearly prohibited by the applicable statutes inasmuch as Section 50–4–22(C) does not define "regular rate of pay." Further, Echostar argues that because Section 50–4–26(A) provides criminal penalties for violations of the Act, the definition of "regular hourly rate" should encompass its agreement with Wendt unless such is clearly and unambiguously prohibited. Echostar also points out that the DOL has not enacted a specific regulation containing its definition, despite statutory authority to do so. *See* § 50–4–27. In light of New Mexico's strong public policy favoring freedom of contract, Echostar contends that the DOL's interpretation must be struck down because its contract with Wendt does not "clearly contravene some law or rule of public morals." *See United Wholesale Liquor Co. v. Brown–Forman Distillers Corp.,* 108 N.M. 467, 471, 775 P.2d 233, 237 (1989). Due to the notice and hearing requirements for enacting regulations, *see* § 50–4–27, as well as the provision of the State Rules Act requiring filing and publication, NMSA 1978, § 14–4–5 (1995), Echostar contends that any interpretation of "regular rate of pay" that prohibits its agreement with Wendt is unenforceable.

{11} As additional support for these arguments, Echostar relies on two United States Supreme Court cases decided shortly after the enactment of the federal Fair Labor Standards Act: *Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942), *superceded by statute on other grounds as stated in Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), and *Walling v. A.H. Belo Corp.,* 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716 (1942), *superceded by statute on other grounds as stated in Condo v. Sysco Corp.,* 1 F.3d 599 (1993). We acknowledge that these cases support Echostar's argument that a fixed rate of pay for fluctuating hours is not prohibited by the words "regular rate." *See Overnight Motor Transp. Co.,* 316 U.S. at 580, 62 S.Ct. 1216 (indicating that employees can have different regular rates every week and that the rate is regular because it provides the same rate of pay for every hour in one week). Further, the *Walling* Court pointed out that it should not provide a definition of "regular rate" when Congress failed to do so, and it also pointed to the benefits for the employee of having the security of a fixed weekly income. *Walling,* 316 U.S. at 634–35, 62 S.Ct. 1223.

{12} We do not believe that these cases and arguments weigh in favor of permitting an employee to contract for diminishing overtime wages because, as we have stated, (1) the statute provides for time and a half; (2) the intent of the statute is to adequately compensate for overtime, to discourage overtime, and to encourage the employment of more workers; (3) a specific provision of the statute provides for basing overtime on fluctuating rates of pay for one limited category of employees; and (4) the Supreme Court authorities relied upon addressed a differently worded statute. Accordingly, we hold that the contract between Wendt and Echostar violates the public policy set forth in the Minimum Wage Act. *See DiGesu v. Weingardt,* 91 N.M. 441, 443, 575 P.2d 950, 952 (1978) (holding that contracts in violation of public policy are unenforceable). Thus, too, cases such as *Inniss v. Tandy Corp.,* 141

Wash.2d 517, 7 P.3d 807, 816 (2000) (en banc) (permitting a fluctuating workweek under a statute which is similar to the federal statute, but different from New Mexico's), are not persuasive either.

■ {13} Moreover, we are not moved by Echostar's arguments about the State Rules Act or notice to employers under the circumstances of this case. We are aware of cases holding that administrative procedures, such as notice, hearing, and publication, are required when an agency promulgates an interpretation of a law, regulation, or order that is intended to apply generally to all cases of a particular type. *See, e.g., Tidewater Marine W., Inc.,* 59 Cal.Rptr.2d at 194, 927 P.2d 296. However, that holding does not apply to an interpretation that arises in the context of a case-specific adjudication, even if that interpretation acts as precedent in future cases. *See id.* The DOL contends that the interpretation here arose in the context of this specific case. Echostar, on the other hand, points to a 1971 letter from the Attorney General to the Labor Commissioner, which seems to interpret our law to disallow "the fluctuating workweek computation of overtime pay," and a 1987 letter from the Labor Commissioner to an attorney whose client wished to avail itself of the fluctuating workweek computation of overtime, in which the Labor Commissioner appeared to respond that such would not be permissible under New Mexico law. Thus, Echostar contends that the interpretation here was generally applicable.

■ {14} We need not decide whether the DOL's interpretation amounts to a general rule that is subject to being declared void for failure of process in this case. That is because we agree with the DOL's interpretation of the law. "If, when we agreed with an agency's application of a controlling law, we nevertheless rejected that application simply because the agency failed to comply with [required administrative procedures], then we would undermine the legal force of the controlling law." *Id.* at 198, 927 P.2d 296. This we will not do.

{15} Finally, we see nothing improper in the DOL's calculation of Wendt's wages based on a forty-hour week. Echostar con-

tends that it is entirely arbitrary to select forty as the number of "regular" hours per week when Wendt admittedly works irregular hours each week. Echostar urges that, in some situations, the use of a forty-hour week would result in wages less than the minimum wage. For example, if a worker ordinarily worked between ten and twenty hours per week for a weekly salary of $120 and then worked fifty hours in one week, the use of a forty-hour week would result in a regular wage of $3.00 per hour. Our response is that if such ever happened, we are confident that the DOL would not use the forty-hour baseline. The facts of this case, however, indicate that Wendt worked in the vicinity of forty hours per week, and her pay stubs found in the record show a "rate" of $12.7404, which is her weekly pay divided by forty.

{16} Along these lines, we are more concerned that Echostar's formula, permitting calculation of overtime based on a fluctuating workweek, would in extreme cases cause hourly wages to fall below the minimum wage threshold. Of course, Echostar points out that, with wages as high as Wendt's, there is little realistic possibility that the minimum wage threshold would be breached. But just as Echostar points out that there is no express statutory authorization for selecting forty as the number of hours to be used in determining the regular hourly wage, we point out that Echostar provides no coherent rationale for determining when wages are too low to allow the fluctuating workweek for which it advocates. Its view (that calculating overtime based on a fluctuating workweek so long as the hourly rate does not fall below the statutory minimum wage floor in a particular case) would, in our opinion, severely undercut the time-and-a-half provision also found in the statute. It is our duty to give effect to all parts of a statute. *See High Ridge Hinkle Joint Venture v. City of Albuquerque,* 1998–NMSC–050, ¶ 5, 126 N.M. 413, 970 P.2d 599.

## III. CONCLUSION

{17} We affirm the judgment of both the metropolitan court and the district court that calculating overtime based on a fluctuating

workweek, pursuant to which an employee earns diminishing hourly overtime wages as the number of overtime hours increases, is inconsistent with Section 50–4–22(C).

{18} **IT IS SO ORDERED.**

WE CONCUR: RODERICK T. KENNEDY and MICHAEL E. VIGIL, Judges.