**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-100**

**Filing Date: August 13, 2012**

**Docket No. 30,089**

**PETER SINCLAIRE,**

   **Plaintiff-Appellant,**

**v.**

**ELDERHOSTEL, INC., a**
**foreign corporation,**

   **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**James A. Hall, District Judge**

The Okon Law Firm
Christa M. Okon
Santa Fe, NM

for Appellant

Tinnin Law Firm, P.C.
Stanley K. Kotovsky, Jr.
Albuquerque, NM

for Appellee

**OPINION**

**FRY, Judge.**

**{1}**     In this case we consider what our Legislature intended when it enacted the statute requiring employers to pay overtime wages for hours worked in excess of forty hours in "any week of seven days." We conclude that "any week of seven days" means a fixed and regularly recurring workweek established by an employer consistent with the federal Fair Labor Standards Act (FLSA) and regulations promulgated under the authority of the FLSA. We reject Plaintiff Peter Sinclaire's argument that the employer's workweek, for purposes

1

of calculating overtime pay, should change each time an employee's work schedule changes. Because our interpretation coincides with that of the district court, we affirm the district court's judgment.

**BACKGROUND**

**{2}** The parties do not dispute the following facts. Sinclaire began work as an employee of Elderhostel in January 2006.[1] Included with the letter from Elderhostel offering Sinclaire employment were documents explaining the procedures for payment of wages and instructions for completing time sheets, and Sinclaire acknowledged receipt of these documents. The documents stated that Elderhostel's workweek was from 12:01 a.m. Sunday to midnight the following Saturday. The documents also instructed Sinclaire to complete one time sheet for each week (Sunday through Saturday); if Sinclaire's program crossed over a Saturday, he was to complete two time sheets.

**{3}** Sinclaire led educational tours for Elderhostel, some of which corresponded with the Sunday-to-Saturday workweek and some of which began on Wednesday and concluded the following Wednesday. As a result of Elderhostel's established workweek and Sinclaire's work schedule, if Sinclaire led a Wednesday-to-Wednesday tour "that required him to work forty-two hours from Wednesday through Saturday and forty-eight hours from Sunday to Wednesday, for a total of ninety hours[, Sinclaire] would not receive overtime pay based on the fifty hours he worked over forty" from Wednesday to Wednesday. Instead, Sinclaire would receive ten hours of overtime—two hours in the first Sunday-to-Saturday workweek and eight hours in the second workweek. However, if Sinclaire's program ran from Sunday to Saturday, as it often did, and if he worked more than forty hours during that program week, he would receive time-and-a-half overtime for each hour over forty.

**{4}** Sinclaire believed that Elderhostel should be paying him overtime based on the week he actually worked rather than on the Sunday-to-Saturday workweek. Because Elderhostel disagreed with this view, Sinclaire filed a claim for unpaid overtime wages with the New Mexico Department of Labor in February 2007. The Department ultimately dismissed the case for lack of jurisdiction, and Sinclaire filed a complaint in magistrate court. The magistrate court dismissed the complaint on the ground that Sinclaire had failed to prove the allegations in his complaint. Sinclaire then appealed the dismissal to the district court.

**{5}** The parties filed cross-motions for summary judgment on the issue of what constitutes a "workweek" under the then-applicable version of NMSA 1978, Section 50-4-22 (2005) (amended 2007), which provided that "[a]n employee . . . shall not be required to work more than forty hours in *any week of seven days*, unless the employee is paid one and

---

[1]Sinclaire claimed he was also due overtime wages for the period from mid-2005 to January 2006, during which time he claims Elderhostel mis-designated him as an independent contractor rather than an employee.

one-half times the employee's regular hourly rate of pay for all hours worked in excess of forty hours." Section 50-4-22(C) (emphasis added)[2]. Sinclaire argued that the statute, which is part of the New Mexico Minimum Wage Act (MWA), 1978 NMSA, §§ 50-4-19 to -30 (1955, as amended through 2009), is remedial in nature and should therefore be liberally construed in light of its goal of protecting the worker. Consistent with this liberal construction, Sinclaire maintained, the emphasis is on the term "any" in the phrase "in any week of seven days." Consequently, Sinclaire argued, he should receive overtime wages for any hours in excess of forty hours that he worked during any seven-day period, regardless of whether the period began on Sunday or Wednesday or any other day of the week.

**{6}** Elderhostel argued that the MWA does not define any "week of seven days" and that, as a result, Section 50-4-22(C) should be interpreted consistent with the FLSA, 29 U.S.C. §§ 201 to 219 (2006). Regulations promulgated under the FLSA provide that "[a]n employee's workweek is a *fixed and regularly recurring* period of 168 hours—seven consecutive [twenty-four]-hour periods" that "may begin on any day and at any hour of the day." Overtime Compensation, 29 C.F.R. § 778.105 (2011) (emphasis added). "Once the beginning time of an employee's workweek is established, it remains fixed regardless of the schedule of hours worked by him." *Id.* Thus, Elderhostel maintained that it appropriately established a Sunday-to-Saturday workweek and properly calculated Sinclaire's overtime wages on the basis of that workweek.

**{7}** Following a hearing on the cross-motions, the district court granted Elderhostel's motion for summary judgment and denied Sinclaire's motion. This appeal followed.

**DISCUSSION**

**{8}** This case requires us to interpret Section 50-4-22(C), and we therefore undertake de novo review. *See N.M. Dep't of Labor v. Echostar Commc'ns Corp.*, 2006-NMCA-047, ¶ 5, 139 N.M. 493, 134 P.3d 780 (stating that "[c]onstruction of statutes is a question of law that we review de novo"). We also review the grant of summary judgment de novo. *Rodriguez v. N.M. Dep't of Workforce Solutions*, 2012-NMCA-059, ¶ 8, 278 P.3d 1047.

**{9}** On appeal, Sinclaire makes the same argument that he made in the district court. The crux of his argument is that an employer must calculate each employee's workweek on the basis of the seven-day period the employee actually works, not on the basis of a fixed seven-day period arbitrarily established by the employer. Thus, according to Sinclaire's view, his workweek with Elderhostel would sometimes be from Wednesday to Tuesday and sometimes from Sunday to Saturday, or it could be an entirely different seven-day period,

---

[2]Section 50-4-22(C) was amended in 2007 and is now Section 50-4-22(D), which states, "An employee shall not be required to work more than forty hours in any week of seven days, unless the employee is paid one and one-half times the employee's regular hourly rate of pay for all hours worked in excess of forty hours."

3

depending on his schedule. Elderhostel would be required to calculate Sinclaire's wages based on his "roving" workweek.

**{10}**     We must determine what the Legislature intended by the language of Section 50-4-22(C), which requires an employer to pay time-and-a-half to an employee who works more than forty hours "in any week of seven days." *See Christus St. Vincent Reg'l Med. Ctr. v. Duarte-Afara*, 2011-NMCA-112, ¶ 9, 267 P.3d 70 (explaining that the primary goal in interpreting statutes is to further legislative intent), *cert. granted*, 2011-NMCERT-010, ___ P.3d ___.  If the meaning of a statute is clear and unambiguous, we apply the statute as written. *See Bishop v. Evangelical Good Samaritan Soc'y*, 2009-NMSC-036, ¶ 9, 146 N.M. 473, 212 P.3d 361.  However, "where the language of the legislative act is doubtful or an adherence to the literal use of words would lead to injustice, absurdity[,] or contradiction, the statute will be construed according to its obvious spirit or reason, even though this requires the rejection of words or the substitution of others."  *Id.* (alteration, internal quotation marks, and citation omitted).

**{11}**     As the district court observed, the statutory phrase at issue here—"any week of seven days"—is not "crystal clear."  Sinclaire contends that the focus should be on the word "any" such that an employee is entitled to overtime pay during any seven-day period.  Elderhostel maintains that the phrase should be interpreted so that it is consistent with the FLSA and that "any week of seven days" permits different employers to establish whatever fixed seven-day workweeks they desire.

**{12}**     To determine which view more likely furthers the Legislature's intent, we turn first to the stated purpose of the MWA.  Section 50-4-19 of the MWA states:

> It is declared to be the policy of this act (1) to establish minimum wage and overtime compensation standards for all workers at levels consistent with their health, efficiency and general well-being, and (2) to safeguard existing minimum wage and overtime compensation standards which are adequate to maintain the health, efficiency and general well-being of workers against the unfair competition of wage and hours standards which do not provide adequate standards of living.

This declared policy recognizes that overtime standards protect workers' health and well-being by ensuring that workers are paid a premium for hours worked beyond the number of hours deemed to be a reasonable maximum per week.  *See Echostar*, 2006-NMCA-047, ¶ 7 (explaining that overtime statutes intend "to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work and to spread employment through inducing employers to shorten hours because of the pressure of extra cost" (internal quotation marks and citation omitted)).  This policy is not inconsistent with Elderhostel's establishment of a fixed workweek.  Employees of Elderhostel receive overtime wages for every hour in excess of forty that they work in a given Sunday-to-

4

Saturday workweek, which qualifies as a "week of seven days" as required by Section 50-4-22(C).

**{13}** Sinclaire argues that the MWA is a remedial statutory scheme and, therefore, it must be interpreted liberally to accomplish its purpose. *See Echostar*, 2006-NMCA-047, ¶ 7. While we agree that this is a correct statement, we do not agree that a fixed workweek thwarts the MWA's remedial purpose. Elderhostel employees are paid overtime wages earned during the Sunday-to-Saturday workweek, which is consistent with the purpose of paying a premium for hours in excess of forty in order to protect workers' health and well-being.

**{14}** In addition, there is nothing in the MWA or our case law that would preclude our interpreting the MWA as being consistent with the FLSA. Indeed, we have stated in reference to the MWA and the FLSA that "[w]hen two statutes cover the same subject matter, we attempt to harmonize and construe them together in a way that facilitates their operation and the achievement of their goals." *N.M. Dep't of Labor v. A.C. Elec., Inc.*, 1998-NMCA-141, ¶ 20, 125 N.M. 779, 965 P.2d 363. The FLSA regulations' requirement of a fixed workweek does not do violence to either the language or the purpose of Section 50-4-22(C).

**{15}** We recognize that this Court has declined to follow the FLSA when we consider it to be inconsistent with state law. For example, in *Echostar*, we held that the fluctuating workweek method of calculating overtime, while acceptable under the FLSA, is inconsistent with Section 50-4-22(C). *Echostar*, 2006-NMCA-047, ¶¶ 11-12, 17. The fluctuating workweek method permits an employer to pay an employee "a fixed weekly salary plus an overtime factor of one-half of the hourly rate, which hourly rate is calculated such that it decreases as the number of hours worked increases." *Id.* ¶ 1. Given the MWA's stated policy, we concluded that "it makes little sense to construe the statute to lessen the financial impact on employers the more hours that employees are required to work." *Echostar*, 2006-NMCA-047, ¶ 7.

**{16}** *Echostar* is distinguishable because a fixed workweek does not necessarily favor the employer under all circumstances. One treatise suggests that a fixed workweek can be advantageous to the employee as well as to the employer. For example, "if an employee works [thirty] hours one workweek and [fifty] hours the next, he or she must receive overtime compensation for the [ten] overtime hours worked in the second workweek, even though the average number of hours worked in the two weeks is [forty]." I Ellen C. Kearns, *The Fair Labor Standards Act*, ch. 10.III.A, at 10-8 (2d ed. 2010). This example is the flip-side of the situation Sinclaire complains about in the present case where the tour at issue did not coincide with Elderhostel's workweek and the overtime pay required was to Elderhostel's advantage. Thus, the fixed workweek can sometimes be more beneficial to the employee and sometimes more beneficial to the employer.

**{17}** Sinclaire maintains that Elderhostel manipulated its workweek and established it so as to avoid paying the maximum amount of overtime. We are not persuaded. Sinclaire

5

presented no evidence suggesting that Elderhostel established a Sunday-to-Saturday workweek in order to evade its obligation to pay overtime. In fact, in support of his motion for summary judgment, Sinclaire submitted one of his schedules, which showed that of thirty-two weeks Sinclaire worked, twenty-one weeks started on days other than Wednesday; of those twenty-one weeks, sixteen started on Sunday, which was the first day of Elderhostel's established workweek. Thus, for at least half the time, Sinclaire received the maximum overtime available under any calculation. The rest of the time, Sinclaire received overtime premium pay as required by Section 50-4-22(C), even if it was not as much as he would have received if the workweek had begun on Wednesday. *See Abshire v. Redland Energy Servs., LLC*, 822 F. Supp. 2d 874, 877 (W.D. Ark. 2011) (noting the "general rule" that "an employer may establish a pay week that differs from its employees' work week if it is for a legitimate, or bona fide, business reason . . . even when a change in payroll schedule results in decreased payments of overtime compensation to [the] employees"); *Kerbes v. Raceway Assocs., LLC*, 961 N.E.2d 865, ¶ 29 (Ill. App. Ct. 2011) (noting that an employer's work schedule that does not coincide with its established workweek "does not deny [the employee] overtime, although it may prevent him from receiving the maximum overtime to which he would be entitled if we accept his contention that a workweek is any and every consecutive seven days that he labors" (internal quotation marks and citation omitted)).

**{18}** Although we generally agree with Sinclaire that state law can provide greater protection for employees than the FLSA, we are not convinced that Section 50-4-22(C) was intended to adopt anything inconsistent with the FLSA's definition of the workweek. It makes sense that employers should be required to establish a fixed workweek (or different fixed workweeks for different types of employees) in order to have predictability and certainty about payrolls. So long as an employer pays its employees a premium for the overtime hours worked in the established workweek, that employer is in compliance with Section 50-4-22(C).

**CONCLUSION**

**{19}** For the foregoing reasons, we affirm the judgment of the district court.

**{20}**  **IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Chief Judge**

_____

6

**MICHAEL D. BUSTAMANTE, Judge**

**Topic Index for** *Sinclaire v. Elderhostel, Inc.*, **No. 30,089**

**APPEAL AND ERROR**
Standard of Review

**EMPLOYMENT LAW**
Fair Labor Standards Act
Minimum Wage Act

**STATUTES**
Interpretation
Legislative Intent
Rules of Construction