# Chevalier v. General Nutrition Centers Inc.

C.P. of Allegheny County, No. GD-13-017194

*Adrian N. Roe* and *Michael D. Simon*, for plaintiffs.
*Brad A. Funari* and *Laura A. Lange*, for defendants.

WETTICK, *J.*, Oct. 20, 2014—In this class action litigation, the subjects of this opinion and order of court are plaintiffs' motion for partial summary judgment or in the alternative, for judgment on the pleadings and defendants' motion for summary judgment. The issue addressed by both motions is whether defendants' method of calculating the pay of salaried employees who work overtime complies with the Pennsylvania Minimum

Wage Act (PMWA), 43 P.S. §333.101 *et seq.* There is no Pennsylvania appellate court case law that has addressed this issue.

Plaintiffs worked as store managers, assistant managers, or senior store managers for defendants ("GNC") during the period between 2009 and April 2011. Plaintiffs were salaried employees whose weekly pay was the same no matter the number of hours worked. However, when a salaried employee worked more than forty hours in a workweek, GNC was also required to pay overtime for the hours worked over the forty-hour workweek.

Both parties agree that the PMWA requires a payment of at least one and one-half of the employee's "regular rate" for each hour worked in excess of forty hours. However, they disagree over how to calculate the employee's "regular rate."

The following illustration sets forth the method by which GNC calculates overtime: the salaried employee is paid $1,000 a week regardless of the number of hours worked. In a particular week, the salaried employee worked 50 hours. GNC divides the weekly pay ($1,000) by the number of hours worked (50). This produces a $20 amount which GNC treats as the employee's "regular rate." GNC divides the $20 amount by two, which produces a $10 amount. This represents 50% of the employee's "regular rate." GNC multiplies the $10 amount by the number of hours of overtime (10).[1] This amount ($100) is paid as overtime. Thus, for this workweek, the salaried employee

---

1. GNC contends that through payment of salary, the salaried employee has already received regular pay for each of the 50 hours or, in other words, the salary covers the first 100% of the overtime. Thus, the employee is owed only an additional 50% of the wage as overtime.

is paid $1,100.[2]

Plaintiffs contend that the "regular rate" should be calculated based on what is earned in a forty-hour workweek. Thus, the "regular rate" should be calculated by dividing the $1,000 weekly payment by forty hours. This produces a $25 per hour amount which plaintiffs treat as their "regular rate."

Plaintiffs next multiply each hour of overtime by one and one-half of this dollar amount, which, according to plaintiffs, is consistent with the FLSA's use of a forty-hour workweek. This produces an amount for ten hours of overtime of $375. Thus, for this workweek, the salaried employee is paid $1,375. This will be referred to as the *forty-hour method* of compensating salaried employees.

These two methods of calculating overtime produce very different results. For the next examples, the workweek pay of the salaried employee is also $1,000.

GNC'S METHOD: THE FLUCTUATING WORKWEEK

Week One-50 Hours

Weekly Salary $1,000.00

Employee's Regular Rate $20.00/hour ($1,000/50)

50% of the Regular Rate $10.00

Overtime (10 x $10.00) $100.00

Total $1,100.00

Week Two — 70 Hours

Weekly Salary $1,000.00

---

2. GNC's method of calculating overtime pay is called the fluctuating workweek method of compensating overtime. In this opinion, I use the term "fluctuating workweek" to describe this methodology.

Employee's Regular Rate $14.28/hour ($1,000/70)

50% of the Regular Rate $7.14

Overtime (30 x $7.14) $214.20

Total $1,214.20

Week Three — 80 Hours

Weekly Salary $1,000.00

Employee's Regular Rate $12.50/hour ($1,000/80)

50% of the Regular Rate $6.25

Overtime (40 x $6.25) $250.00

Total $1,250.00

Differences between week two and week one: Employee worked 20 additional hours — earned an additional $114.20 — i.e., $5.71 per hour for the hours of overtime between 50 and 70.

Differences between week three and week one: Employee worked an additional 30 hours — earned an additional $150.00 — which equates to $5.00 per hour for the 30 additional hours of overtime between week one (50 Hours) and Week Three (80 Hours).

PLAINTIFF'S FORTY — HOUR METHOD

Week One — 50 Hours

Weekly Salary $1,000.00

Employee's Regular Rate $25.00/hour ($1,000/40)

150% of the Regular Rate $37.50

Overtime (10 x $37.50) $375.00

Total $1,375.00

Week Two — 70 Hours

Weekly Salary $1,000.00

Employee's Regular Rate $25.00/hour ($1,000/40)

150% of the Regular Rate $37.50

Overtime (30 x $37.50) $1,125.00

Total $2,125.00

Week Three — 80 Hours

Weekly Salary $1,000.00

Employee's Regular Rate $25.00/hour ($1,000/40)

150% of the Regular Rate $37.50

Overtime (40 x $37.50) $1,500.00

Total $2,500.00

Differences between week one and week two: Employee worked 20 additional hours and earned an additional $750 ($37.50 per hour).

Differences between week one and week three: Employee worked 30 additional hours and earned an additional $1,125.00 ($37.50 per hour).

There is a third construction that neither party has proposed. The "regular rate" will be based on a forty-hour week, but for a salaried employee, the salary covers the first 100% of the overtime. *See Goodrow v. Lane Bryant, Inc.*, 732 N.E.2d 289 (Mass. 2000).

### PENNSYLVANIA MINIMUM WAGE LAW AND REGULATIONS

Both parties agree that the question of whether defendants' method of calculating overtime is permitted under the PMWA is governed by 43 P.S. §333.104(c) of the PMWA and regulations promulgated pursuant to this section. Section 333.104(c) of the PMWA reads as follows:

(c) Employes shall be paid for overtime not less than one and one-half times the employe's regular rate as prescribed in regulations promulgated by the secretary: Provided, That students employed in seasonal occupations as defined and delimited by regulations promulgated by the secretary may, by such regulations, be excluded from the overtime provisions of this act: And provided further, That the secretary shall promulgate regulations with respect to overtime subject to the limitations that no pay for overtime in addition to the regular rate shall be required except for hours in excess of forty hours in a workweek....

The relevant regulations promulgated pursuant to 43 P.S. §333.104(c) are set forth in 34 Pa.Code §§231.41, 231.42, and 231.43:

231.41. Rate.

Except as otherwise provided in section 5(a)-(c) of the act (43 P.S. §333.105(a)-(c)), each employee shall be paid for overtime not less than 1-1/2 times the employee's regular rate of pay for all hours in excess of 40 hours in a workweek.

§231.42. Workweek.

The term workweek shall mean a period of 7 consecutive days starting on any day selected by the employer. Overtime shall be compensated on a workweek basis regardless of whether the employee is compensated on an hourly wage, monthly salary, piece rate or other basis. Overtime hours worked in a workweek may not be offset by compensatory time off in any prior or subsequent workweek.

§231.43. Regular rate.

For purposes of these §§231.41-231.43 (relating to overtime pay), the regular rate at which an employee is employed shall be deemed to include all remuneration for employment paid to or on behalf of the employee, but it shall not be deemed to include the following:

(1) Sums paid as gifts, payments in the nature of gifts made at Christmas time or on other special occasions as a reward for service, the amounts of which are not measured by or dependent on hours worked, production or efficiency.

(2) Payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work or other similar cause, reasonable payments for traveling expenses or other expenses incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer, and other similar payments to an employee which are not made as compensation for the employee's hours of employment.

(3) Sums paid in recognition of services performed during a given period if:

(i) Both the fact that payment is to be made and the amounts of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement or promise causing the employee to expect such payments regularly.

(ii) The payments are made pursuant to a bona fide

profit-sharing plan or trust or bona fide thrift or savings plan without regard to hours of work, production or efficiency.

(iii) The payments are talent fees paid to performers, including announcers on radio and television programs.

(4) Contributions irrevocably made by an employer to a trustee or third person under a bona fide plan for providing old-age, retirement, life, accident or health insurance or similar benefits for employees.

(5) Extra compensation provided by a premium rate for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of 8 in a day or in excess of the maximum workweek applicable to the employee under §231.41 (relating to rate) or in excess of the normal working hours or regular working hours of the employee, as the case may be.

(6) Extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than 1 1/2 times the rate established in good faith for like work performed in nonovertime hours on other days.

(7) Extra compensation provided by a premium rate paid to the employee in pursuance of an applicable employment contract or collective bargaining agreement for work outside of the hours established in good faith by the contract or agreement as the basic, normal or regular workday not exceeding 8 hours or

workweek not exceeding the maximum workweek applicable to the employee under §231.41 (relating to rate), where the premium rate is not less than 1 1/2 times the rate established in good faith by the contract or agreement for like work performed during the workday or workweek.[3]

(b) If the employee is paid a flat sum for a day's work or for doing a particular job without regard to the number of hours worked in the day or at the job and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at the day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to extra half-time pay at this rate for hours worked in excess of 40 in the workweek.

(c) No employer may be deemed to have violated these §§231.41-231.43 (relating to overtime pay) by employing an employee for a workweek in excess of the maximum workweek applicable to the employee under § 231.41 (relating to rate) if the employee is employed under a bona fide individual contract or under an agreement made as a result of collective bargaining by representatives of employees, if the duties of the employee necessitate substantially irregular hours of work. For example, where neither the employee not the employer can either control or anticipate with a degree of certainty the number of hours the employee must work from week to week, where the duties of the employee necessitate significant variations in weekly

---

3. The parties agree that the above provision of §231.43 should be treated as subsection (a).

hours of work both below and above the statutory weekly limit on nonovertime hours, or where the substantially irregular hours of work are not attributable to vacation periods, holidays, illness, failure of the employer to provide sufficient work, or other similar causes, and the contract or agreement:

(1) Specifies a regular rate of pay of not less than the minimum hourly rate and compensation at not less than 1 1/2 times the rate for hours worked in excess of the maximum workweek.

(2) Provides a weekly guaranty of pay for not more than 60 hours based on the rates so specified.

(d) No employer may be deemed to have violated these §§231.41-231.43 by employing an employee for a workweek in excess of the maximum workweek applicable to the employee under §231.41 if, under an agreement or understanding arrived at between the employer and the employee before performance of the work, the amount paid to the employee for the number of hours worked by him in the workweek in excess of the maximum workweek applicable to the employee under §231.41:

(1) In the case of an employee employed at piece rates, is computed at piece rates not less than 1 1/2 times the bona fide piece rates applicable to the same work when performed during nonovertime hours.

(2) In the case of an employee's performing two or more kinds of work for which different hourly or piece rates have been established, is computed at rates not less than 1 1/2 times the bona fide rate applicable to the

same work when performed during nonovertime hours.

(3) Is computed at a rate not less than 1 1/2 times the rate established by the agreement or understanding as the basic rate to be used in computing overtime compensation thereunder; and if the average hourly earnings of the employee for the workweek, exclusive of payments described in subsection (a)(1)-(7), are not less than the minimum hourly rate required by applicable law and if extra overtime compensation is properly computed and paid on other forms of additional pay required to be included in computing the regular rate.

(e) Extra compensation paid as described in subsection (a)(5)-(7) shall be creditable toward overtime compensation payable under these §§231.41-231.43 (relating to overtime pay).

(f) No employer may be deemed to have violated these §§231.41-231.43 by employing an employee of a retail or service establishment for a workweek in excess of 40 hours if:

(1) The regular rate of pay of the employee is in excess of 1 1/2 times the minimum hourly rate applicable.

(2) More than half of the employee's compensation for a representative period, not less than 1 month, represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

The PMWA provides that employees shall be paid for overtime "not less than one and one-half times the employe's regular rate as prescribed in regulations promulgated by the secretary...." 43 P.S. §333.104(c). The PMWA does not define "regular rate." However, the Act does authorize the secretary to promulgate regulations that could, *inter alia*, define the term "regular rate" as used in the PMWA and 34 Pa.Code §231.41. The regulations set forth above were promulgated pursuant to this legislative authorization. None provide guidance as to whether an employer may use the fluctuating work week to calculate overtime pay for salaried employees.

The initial regulation (§231.41) titled rate repeats the language within the PMWA that employees shall be paid for overtime "not less than 1-1/2 times the employee's regular rate of pay for all hours in excess of 40 hours in a workweek." It provides no guidance as to the meaning of "regular rate."

The second regulation (§231.42) does not address the meaning of "regular rate." This regulation, titled *Workweek*, provides that overtime shall be compensated on a workweek basis.

The third regulation (§231.43), titled *Regular Rate*, initially describes seven categories of payments for or on behalf of an employee that shall not be included in calculating the "regular rate" of pay, a term that remains undefined.

Neither party suggests that this third regulation supports that party's interpretation of "regular rate" as applied to salaried employees.

The remainder of 34 Pa.Code §231.43 does not address the definition of "regular rate" as applied to a salaried nonexempt employee.

Section 231.43(b) governs overtime for employees paid a flat sum for a day's work or for doing a particular job without regard to the number of hours worked in the day or at the job — this employee's "regular rate is determined by totaling all the sums received at the day rates or job rates in the workweek and dividing by the total hours actually worked." *Id.* The employee is then entitled to extra half-time pay at this rate for hours worked in excess of 40 in the workweek. *Id.* At oral argument, each party agreed that this subsection did not apply to salaried employees who work overtime. The obvious reason is that plaintiffs are not paid a flat sum for a day's work or for doing a particular job without regard to the number of hours worked.

Neither party contends that 34 Pa.Code §231.43(c) applies. This provision creates a safe harbor where the duties of the employee necessitate substantially irregular hours of work such as where neither the employee nor the employer can control or anticipate with a degree of certainty the number of hours the employee must work from week to week, and where the duties of the employee necessitate significant variations in weekly hours of work both below and above the statutory weekly limit on nonovertime hours. The obvious reason for neither party relying on this subsection is that the subsection does not describe the work that plaintiffs perform.

I next consider section of 34 Pa.Code §231.43 (d)(3) which states that an employer shall not be deemed to have

violated the PMWA if the employer pays not less than one and one-half times a "rate established by the agreement or understanding [of the employer and the employee] as the basic rate to be used in computing overtime compensation." At oral argument, the parties stated that they were not looking to this provision to support their proposed interpretations of the term "regular rate" as applied to salaried employees. The obvious reason is that there was no agreement or understanding arrived at between plaintiffs and defendants as to the basic rate to be used in computing overtime compensation.

## CONCLUSION

The PMWA provides for overtime pay at one and one-half times the employee's "regular rate." 43 P.S. §333.104(c). "Regular rate" is an undefined term. The regulations promulgated pursuant to the provisions of the PMWA providing for the secretary to promulgate regulations do not define "regular rate." Consequently, the answer to the question of whether an employer can use the fluctuating workweek to calculate the overtime pay owed to a salaried employee cannot be found in the language of the legislation or accompanying regulations.

## CASE LAW

There is no Pennsylvania appellate court case law which has considered how the "regular rate" shall be calculated where a salaried non-exempt employee works more than forty hours in a workweek. Plaintiffs contend that three recent cases decided by Pennsylvania Federal District Courts, applying Pennsylvania state law, support plaintiffs: *Verderame v. RadioShack Corp.*, ____ F.Supp.2d ____ (2014), No. 2:13-2539, United States District Court

for the Eastern District of Pennsylvania, July 10, 2014; *Foster v. Kraft Foods Global, Inc.*, 285 F.R.D. 343 (W.D. Pa. 2012); and *Cerutti v. Frito-Lay, Inc.*, 777 F.Supp.2d 920 (W.D. Pa. 2011). I disagree.

These cases do not address the issue of whether an employer's utilizing the fluctuating workweek to compensate a salaried employee who works overtime is permitted by the PMWA where a basic rate has not been established by agreement. In each of these cases, the court ruled that a basic rate to be used in computing overtime compensation was established by agreement or understanding within the meaning of §231.43(d)(3) of the regulations and that, where the rate is established by agreement or understanding, the overtime rate cannot be "less than 1 1/2 times" this basic rate established by the agreement or understanding. I believe that the rulings of the Federal District Court are supported by clear and unambiguous language that does not provide any guidance where the parties have not established a basic rate by agreement or understanding.

*See Cerutti* where the court ruled:

Section 231.43(d)(3) clearly requires that OT pay be computed at "1 1/2 times" the rate established by the agreement or understanding. *Id.* Under a plain reading of that regulation, Frito-Lay cannot have it both ways. Frito-Lay concedes that it paid plaintiffs pursuant to 34 PA. CODE §231.43(d). If so, it cannot comply with that section without paying plaintiffs at an OT rate of one and one-half times the plaintiffs' regular rate. Therefore, the court need not predict whether Pennsylvania courts would recognize the FWW method

of OT payment. Similarly, the court need not consider communications from the Pennsylvania Department of Labor and Industry, discussing whether Pennsylvania law would recognize the FWW.

...

With respect to whether Frito-Lay's method of compensating plaintiffs according to the FWW would be lawful in Pennsylvania, the court finds this question is irrelevant because Frito-Lay's OT payment to plaintiff in the amount of one-half times their regular pay for hours worked over forty in a week does not comport with either 34 PA.CODE §231.43(b) or (d)(3).

*Id.* at 945.

In *Foster*, the court addressed only whether "the FWW [fluctuating work week] method is permissible under 34 Pa.Code §231.43(d)(3)...." *Id.* at 345. The court agreed with the ruling in *Cerutti* that the employer's use of the fluctuating workweek method is not permissible under 34 Pa.Code §231.43(d)(3). *Id.* at 348. The fluctuating workweek pays only one-half times the "regular rate," and 34 Pa.Code §231.43(d)(3) expressly requires overtime payment at the rate of one and one-half times the "regular rate."

The court's opinion was limited to whether an employer can rely on the safe harbor set forth in 34 Pa.Code §231.43(d)(3) if the employer pays only one-half times the pay rate:

The undersigned, like Judge Conti, need not predict whether Pennsylvania courts would recognize the FWW method as permissible under the PMWA. The

undersigned joins Judge Conti, however, in holding that payment of overtime under the FWW method at one-half times the regular or basic rate, as opposed to one and one-half times (or more), is impermissible under the plain language of 34 Pa.Code §231.43(d)(3).

*Id.* at 347 (footnote omitted).

In *Verderame*, the court also addressed the employer's claim that its use of the fluctuating workweek method for compensating the plaintiff for overtime fits within 34 Pa.Code §231.43(d)(3). The court, citing *Cerutti* and *Foster*, and relying on §231.43(d)(3), stated:

RadioShack has been compensating plaintiff using the fluctuating workweek method as set forth in 29 C.F.R. §778.114. While this method of compensation may be lawful under the baseline federal regulation, the same cannot be said as it applies to the more employee-friendly Pennsylvania regulation. Upon a reading of the plain regulatory language of 34 Pa.Code §231.43(d)(3), I hold that RadioShack violated the PMWA by not compensating plaintiff for overtime at "1 1/2 times" the basic rate as set forth in their compensation plan.

*Id.* at *7.

## CONCLUSION

The case law, cited by plaintiffs, barring employers from using the fluctuating workweek for compensating salaried employees relies on the language of 34 Pa.Code §231.43(d)(3). In the present case, both parties have agreed that this regulation does not apply to this case because the parties did not establish a basic rate to be used in computing overtime compensation.

## U.S. FAIR LABOR STANDARDS ACT ("FLSA")

While the PMWA and the accompanying regulations do not address the issue of whether employers may use the fluctuating workweek to calculate the overtime pay owed to salaried employees, defendants contend that Pennsylvania borrowed the federal scheme for calculating overtime. This scheme permits the use of the fluctuating workweek for salaried employees.

In 1938, Congress enacted legislation, 29 U.S.C.A. §201 *et seq.* (FLSA), which provided that no employer shall employ any of its employees for a workweek longer than forty hours "unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C.A. §207(a)(1). The act did not define "regular rate."

Four years later, in *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942), the United States Supreme Court ruled that the term "regular rate" was flexible enough to permit calculation of overtime compensation using the fluctuating workweek.

Subsequently, the Department of Labor incorporated into Title 29 of the Code of Federal Regulations *Overnight Motors'* definition of "regular rate" as the total remuneration for employment in any workweek divided by the total number of hours actually worked. 29 C.F.R. §778.109.

The FLSA sets a minimum wage applicable to all employers engaged in interstate commerce. 29 U.S.C.A. §206. This legislation does not preempt the states from

setting minimum wages, including minimum wages for overtime, that exceed FLSA wage minimums. 29 U.S.C.A. §218. Consequently, the issue in this case is whether PMWA allows Pennsylvania employers to use the fluctuating workweek method for compensating salaried employees.

At the times that the PMWA was enacted and the accompanying regulations were promulgated, federal law, through case law and regulation, permitted employers to use the fluctuating workweek to calculate overtime for salaried employees. The PMWA uses language similar to the language of the FLSA. Both Acts prohibit employers from employing any employees for a workweek longer than forty hours unless:

FLSA

"such employee receives compensation for his employment...at a rate not less than *one and one-half the regular rate* at which he is employed." 29 U.S.C.A. §207(a)(1) (emphasis added).

PMWA

[the employee] is "paid for overtime not less than *one and one-half times the employe's regular rate* as prescribed in regulations promulgated by the secretary...." 43 P.S. §333.104(c) (emphasis added).

Defendants contend that since the Pennsylvania General Assembly, in enacting a minimum wage requirement for overtime pay, used the language of the FLSA, namely, one and one-half the employee's "regular rate," it intended for the words "regular rate" to receive the meaning given to these words under existing federal law.

Defendants rely on the rule of construction that where a more recently enacted state law uses the language of a federal act, the state law shall be interpreted in the same fashion as the federal act. *See Commonwealth of Pa., Dep't of Labor and Indus., Bureau of Labor Law Compliance v. Stuber*, 822 A.2d 870, 873 (Pa. Cmwlth. 2003) ("In the past, this court has indicated that it is proper to give deference to a federal interpretation of a federal statute when the state statute substantially parallels it...and the state and federal acts have identity of purpose." (Citations omitted.))

Also, defendants correctly state that the regulations promulgated by the secretary use the terminology used in the FLSA:

FLSA §207(a)(1) is reflected (albeit worded differently) in 34 Pa.Code §231.41.

Subparagraphs 1-7 of FLSA §207(e) titled "Regular rate" defined appears in 34 Pa.Code §231.43(a)(5) at subparagraphs 1-7.

FLSA §207(f) appears at 34 Pa.Code §231.43(c).

FLSA §207(g), "Employment at piece rates," is placed nearly word-for-word at 34 Pa.Code §231.43(d).

34 Pa.Code §231.42 appears to be an amalgam of 29 CFR §§778.104, 105, and 109.

34 Pa.Code §231.43 includes a deliberate selection of several provisions in the FLSA and in federal regulations.

According to defendants, the secretary's promulgating only regulations also found in the FLSA and federal regulations signals the intention of the secretary that

the FLSA and its regulations look to the federal law's interpretation of "regular rate" in interpreting state law.

In summary, defendants contend that the general assembly's use of the term "regular rate," also used in the FLSA, expressed an intention to use federal case law and regulations to interpret "regular rate." Also, according to defendants, because the Pennsylvania regulations use language and concepts of the FLSA and its regulations, the secretary intended to adopt the federal scheme for calculating overtime pay. Finally, defendants argue that because federal law is settled and there is a uniformity of purpose between federal and state law, the general assembly and the secretary, by using the same language as used in the federal law, intended for the FLSA and accompanying regulations to be persuasive authority.

I agree with plaintiffs that there are several flaws in defendants' analysis.

First, the PMWA does not say that employees shall be paid for overtime, not less than "the employe's regular rate." If that was all that was said, I would agree with defendants that the general assembly did not define "regular rate" because it intended for federal law to answer the many questions not answered by the one sentence requiring payment for overtime. I would reach this result because the most reasonable explanation for the decision of the general assembly to enact legislation that did not define "regular rate" or address obvious questions that are not answered by the general assembly is that federal law had already done so and the general assembly intended to borrow the federal scheme.

The difficulty with this argument is that the general

assembly did not look to federal law to define "regular rate." To the contrary, the general assembly looked to the secretary to fill in the blanks by providing in the PMWA that an employee shall be paid for overtime not less than one and one-half times the employee's "regular rate" "AS PRESCRIBED IN REGULATIONS PROMULGATED BY THE SECRETARY." 43 P.S. §333.104(c) (emphasis added). This emphasized provision expresses a legislative intent that the secretary shall decide whether and when to promulgate regulations answering the unanswered questions. Defendants' argument that the general assembly intended for federal law to apply is without merit because the PMWA expressly delegated to the secretary the authority to promulgate regulations that would define "regular rate." Defendants' contention that the language of the PMWA shows a legislative intent to incorporate federal law with respect to the meaning of "regular rate" of pay cannot be reconciled with the language of the PMWA, stating that the employees shall be paid overtime that is based on the employee's "regular rate" "as prescribed in regulations promulgated by the secretary." 43 P.S. §333.104(c).

While both parties acknowledge that the secretary is authorized by 43 P.S. §333.104(c) to address whether overtime for salaried employees may be calculated by using the fluctuating workweek, neither party claims that any regulation promulgated by the secretary addresses this question.

I next consider defendants' contention that the fact that all regulations promulgated by the secretary are borrowed from the FLSA and federal regulations shows that the secretary intended to adopt the federal scheme. I agree with plaintiffs that this argument lacks merit, because the

regulations which the secretary promulgated cover only a small number of sections of the FLSA and the code of federal regulations governing overtime payments.

34 Pa.Code §231.43(b) governing overtime to employees paid a flat sum for a day's work or for doing a particular job without regard to the number of hours worked is taken word-for-word from the FLSA §207(f). This Pennsylvania regulation allows the use of the fluctuating workweek.

However, the provision of the Federal Code (29 CFR §778.114) governing salaried employees (which also allows the use of the fluctuating workweek) is not included in the Pennsylvania regulations.

I agree with plaintiffs that the inclusion of only one of the two federal regulations undermines the argument that the secretary intended to adopt all overtime provisions of the FLSA and Code of Federal Regulations. *See Friedrich v. U.S. Computer Servs. Inc.*, 833 F.Supp. 470, 476 (E.D. Pa. 1993):

> The fact that §231.43(b) is analytically identical to the two federal regulations [i.e., Sections 778.112 and 778.114] — and exactly identical to one of them, §778.112 — indicates that [Pennsylvania's] Industrial Board of the Department of Labor and Industry knew about the federal regulations when drafting the state regulations. The industrial board adopted — verbatim — one of the regulations, but did not adopt the other. To hold that the industrial board intended to adopt both federal regulations, even though the language of only one appears in the state regulations, would be to ignore what the industrial board actually did. While it might

be convenient for ... multi-state employers if federal law and Pennsylvania law were identical on the issue of overtime compensation, the fact is that they are not.

Plaintiffs want to take the inclusion of the one federal regulation and the exclusion of the other one step further. Plaintiffs contend that since the two federal regulations address similar situations, the best explanation for the secretary's decision not to include the federal regulation allowing the use of the fluctuating workweek for salaried employees is that a decision was made that this federal regulation and the fluctuating workweek method should not be used for salaried employees.

I do not believe that this is the best explanation for the secretary having included only one of two federal regulations governing similar issues.

The secretary would have been very aware of the common practice of salaried employees being required to work overtime. The secretary would not have believed that there was no need for a regulation. This would be inconsistent with the secretary's promulgating a regulation covering a similar issue that probably arises less frequently than salaried employees working overtime, namely, how to calculate overtime pay for employees paid a flat sum for a day's work or for doing a particular job without regard to the number of hours worked. Also, because of the frequency of the practice of salaried employees working overtime and the absence of any guidance from the PMWA, it is not at all likely that the secretary, who is charged with developing a definition of "regular rate," saw no need for a regulation answering the question of whether an employer may use the fluctuating workweek

to calculate overtime for salaried employees.

I believe that the most reasonable explanation as to why the secretary did not promulgate a regulation governing salaried employees is that there was not sufficient support for a regulation answering, one way or the other, the question of whether an employer may use the fluctuating workweek for salaried employees.

Since neither the general assembly nor the secretary has addressed the issue of how to construe "regular rate" of pay, it is for the courts to do so.

In deciding this matter, a court should first determine what is the apparent purpose for the enactment of the portion of the PMWA requiring extra pay for overtime and should, thereafter, determine whether the apparent purpose is best furthered by permitting employers to use the fluctuating workweek to calculate overtime pay for salaried employees or by barring the use of this method of calculating overtime pay for salaried employees.

The purpose of the portion of a minimum wage act requiring overtime pay is to increase employment, reduce overtime, and adequately compensate employees who must work more than a standard forty-hour workweek.[4] The means for achieving this goal is to require sufficient extra pay for overtime work such that employers will hire new employees in lieu of requiring existing employees to work overtime. *Overnight Motor Transp. Co. v. Missel, supra,* 316 U.S. at 577-78; *Haynes v. Tru-Green Corp.,*

---

4. Most employees have no protection from being required to work excessive hours. For many salaried employees, excess overtime substantially interferes with the employees' responsibilities as parents and spouses and their participation in community and in religious activities.

507 N.E.2d 945, 948 (Ill. App. Ct. 1987); and *Janes v. Otis Eng'g Corp.*, 757 P.2d 50, 53 (Alaska 1988).

I find that these goals of the PMWA are furthered by construing the PMWA to bar the use of the fluctuating workweek for compensating salaried employees who work overtime. The fluctuating workweek method of compensating salaried employees provides very little financial incentive to expand the work force rather than pay substantial hours of overtime to existing employees at lower rates per hour. A reading of the PMWA that reduces the hourly overtime compensation as the amount of overtime increases clashes with the goals of the PMWA.

Under the fluctuating workweek method, a salaried employee receiving $600 each week will be paid $15 per hour if the employee worked only forty hours. If the employee works fifty hours, the employee will be receiving only $12 per hour as their "regular rate," and if the employee works sixty hours, the employee will be receiving only $10 per hour as their "regular rate." In other words, for each extra hour of overtime the employee works, the hourly rate declines. Consequently, the fluctuating workweek creates an incentive to increase the hours of overtime, rather than expanding the workforce.

In *Inniss v. Tandy Corp.*, 7 P.3d 807 (Wash. 2000), the Supreme Court of Washington addressed the question of whether an employer's use of the fluctuating workweek to calculate overtime pay for salaried employees violated the Washington Minimum Wage Act. The Washington Minimum Wage Act is similar to the PMWA; it provides compensation at one and one-half-times the "regular rate" — an undefined term. 49 RCWA §49.46.130. (However,

the Washington Act did not specifically authorize the promulgation of regulations with respect to this provision.)

Five of the nine justices ruled that employers may use the fluctuating workweek to calculate overtime pay for salaried employees. The majority opinion stated that the Legislature enacted the Washington Minimum Wage Act to confirm state minimum wage laws to the FLSA Thus, the provisions of the FLSA and regulations set forth in the CFR were persuasive authorities. Consequently, the court looked to 29 CFR §778.114, which considers overtime pay for salaried employees and permits the use of the fluctuating workweek.

I agree with the ruling of the majority. *See* page 15 of this opinion where I said that I would have found a legislative intent to follow federal law if the PMWA had not authorized the secretary to implement regulations.

However, where, as in the present case, there is no legislative intent, I find to be persuasive the dissenting opinion in *Inniss, supra,* which rejected the defendants' interpretation of "regular rate" as allowing the use of the fluctuating workweek to calculate overtime pay for salaried employees. The dissenting opinion concludes that "[r]ather than offering an incentive to employers to spread employment and hire additional workers, an employer like Radio Shack would have an actual incentive to work employees like their managers an ever increasing number of hours because the effective rate paid to such individuals would diminish with the additional hours worked." *Id.* at 817. The dissenting opinion further stated:

The purpose of overtime wage laws is to encourage employers to spread employment by hiring additional

workers rather than paying overtime. In fact, some courts across the United States have held the fluctuating workweek concept defeats the very purpose of overtime wage statutes. The Alaska Supreme Court reached this conclusion regarding its minimum wage law in *Dresser Indus., Inc. v. Alaska Dep't of Labor*, 633 P.2d 998 (Alaska 1981). In that case, the Alaska Supreme Court held the use of the fluctuating workweek allows employers to decrease the workers' average hourly wage as the workers' overtime increases, which "contravenes the policies of requiring increased overtime compensation and promoting the spreading of employment." *Id.* at 1006. These states are correct. A fluctuating workweek concept, as practiced here, is inconsistent with RCW 49.46.130(1).

*Id.* at 818 (citations omitted).

I also find to be persuasive the reasoning of the court of appeals for New Mexico in *Dir., Labor and Indus. Div., New Mexico Dept. of Labor v. EchoStar Commc'ns Corp.*, 134 P.3d 780 (N.M. Ct. App. 2006). This court stated that the purpose of the statute providing for time and a half pay for overtime is to adequately compensate for overtime, discourage overtime, and encourage employment of more workers. *Id.* at 782-83. The court barred the use of the fluctuating workweek for calculating the "regular rate" because any calculation that decreases the hourly rate as the number of hours worked increases conflicts with the New Mexico Minimum Wage Act, which prohibits any calculation resulting in overtime pay of less than time and a half.[5]

---

5. I recognize that this case can be distinguished because of a

I recognize that from the employer's standpoint, the salaried employee looks very much like an hourly employee if overtime is not calculated by using the fluctuating workweek. However, the justification for minimum wage legislation is that employees lack bargaining power. Consequently, the controlling issue should be whether or not the use of the fluctuating workweek promotes the goals of the PMWA.

In their brief, defendants recognize that the secretary could promulgate a regulation either permitting or prohibiting the use of the fluctuating workweek or, in other words, that the PMWA may be construed to bar or permit the use of the fluctuating workweek for salaried employees. If the PMWA can be construed to bar the use of the fluctuating workweek, the question for this court to decide should be whether or not the use of the fluctuating workweek furthers the goals of the PMWA.

## CONCLUSION

The general assembly delegated to the secretary the responsibility for promulgating regulations interpreting "regular rate." The one sentence of the PMWA mandating overtime pay provides no guidance as to whether an employer is permitted to use the fluctuating workweek to calculate overtime pay for salaried employees. The regulations also provide no guidance.

When the words of a statute are not clear, the intention of the general assembly may be ascertained by considering the occasion and necessity for the statute, the mischief to

specific provision in the New Mexico Minimum Wage Act providing for basing overtime on fluctuating rates of pay for one limited category of employees. N.M.S.A. §50-4-22.

be remedied, and the object to be attained. *Habecker v. Nationwide Ins. Co.*, 445 A.2d 1222, 1224 (Pa. Super. 1982); 1 Pa.C.S.A. §1921.

The purpose of the portion of the PMWA governing overtime was to alter the behavior of employers. The goal was to cause employers to hire new workers in lieu of paying existing employees to work overtime by making overtime more expensive. A construction of the PMWA that allows the use of the fluctuating workweek encourages the use of overtime. A method for calculating overtime that defines "regular rate" as the rate based on a forty-hour workweek creates a substantial financial incentive to hire new employees instead of paying for overtime. Consequently, GNC's use of the fluctuating workweek to calculate plaintiffs' overtime pay violates the PMWA.

For these reasons, I enter the following order of court:

ORDER OF COURT

On this 20th day of October 2014, it is hereby ordered that:

(1) Plaintiffs' motion for partial summary judgment requesting this court to hold that GNC's policy of using the fluctuating workweek method of calculating overtime violates the Pennsylvania Minimum Wage Act is granted;

(2) Defendants' motion for summary judgment seeking dismissal of plaintiffs' complaint is denied; and

(3) a status conference will be held on November 5, 2014 at 11:00 A.M. o'clock.